**BUCOLO, INC., Plaintiff, Appellant,**

v.

**S/V JAGUAR, etc., Defendants, Appellees.**

**No. 7528.**

United States Court of Appeals, First Circuit.

May 14, 1970.

---

* Honorable William M. Byrne, United States District Judge for the Central District of California, sitting by designation.

Frank H. Handy, Jr., Boston, Mass. with whom Viola B. Kneeland and Kneeland, Splane & Kydd, Boston, Mass., were on the brief, for appellant.

William G. Downey, Boston, Mass., with whom Edwin R. Trafton, Boston, Mass., was on the brief, for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is an action arising out of the collision of two fishing vessels, the ELIZABETH ANN and the JAGUAR. The court found both to blame, 304 F.Supp. 1403, and the ELIZABETH ANN appeals.

The collision occurred on a clear night near the inner end of Fort Phoenix Reach, a channel 350 feet wide, running north and south, leading to the dike at the entrance to New Bedford harbor. Each vessel had her master at the helm. The ELIZABETH ANN was bound in. The JAGUAR, bound out, crossed to the ELIZABETH ANN'S side of the channel, the court found, striking her amidships on the port side. The JAGUAR admits to not having seen the ELIZABETH ANN in time, and concedes fault. The court faulted the ELIZABETH ANN for not sounding the four or more warning blasts required in case of doubt by Rule III. 33 U.S.C. § 203. It rejected the ELIZABETH ANN'S claim that it was too late for a warning to have been of use, or that she should be forgiven because the situation was *in extremis*. Finally, it rejected the major and minor fault rule.

We find the appeal without merit. The master of the ELIZABETH ANN testified that he was at his far side of the channel; that he had long seen the JAGUAR; that until the vessels were 100 yards apart she showed only her masthead and port light, but that at this point the JAGUAR turned, showing her starboard light as well. He construed this to be a southeasterly course, and a "crossing situation." When they were 50 yards, and five seconds, apart, he blew one blast to signify a port-to-port passing. The JAGUAR did not respond, not having heard the whistle or yet seen the ELIZABETH ANN'S lights, and then seeing her too late, struck her at about a 50° angle. The court found the JAGUAR'S master to have been in a "reverie," but concluded that he might well have been alerted by a series of blasts. The ELIZABETH ANN does not claim that a warning series might not have been heard, but says that after the JAGUAR did not respond to the single blast it was too late.

One who would attack the court's findings must have his own ship in order. If the ELIZABETH ANN was where she said she was, she should have had doubts as to the JAGUAR'S in-

tentions the moment the latter appeared to be establishing a crossing course. To cross the ELIZABETH ANN'S course would take the JAGUAR outside the channel, a pointless and dangerous procedure. When asked why he himself did not bear away to starboard to avoid the collision, the master of the ELIZABETH ANN testified, "I was [already] as far as I could be on the east side of the channel without going aground in the mud."

Only if the ELIZABETH ANN was not at the edge of the channel could such a crossing course have had a modicum of sense. However, had her master testified to being near the center, (where the JAGUAR said he was) he risked putting himself aground in the courtroom. We need not pursue the argument, vigorously made by the JAGUAR, that the court erred as to the locale of the collision. As we review the evidence, the ELIZABETH ANN was materially at fault whether she was on the wrong side or the right side of the channel.

Accepting the ELIZABETH ANN'S testimony, as did the court, the question is not simply whether the court was plainly wrong in finding that at 50 yards, and five seconds, there was still a possibility of alerting the JAGUAR. If we were to agree that by then it was too late, it would follow that the ELIZA–BETH ANN must answer why, at 100 yards, and ten seconds, away, when her master saw the JAGUAR apparently undertaking this dangerous maneuver, he did not give a warning "immediately," as called for by RULE III. To have waited, and then sounded one blast when he was about to be hit amidships in five seconds, was a long way from a minor fault. General Seafoods Corporation v. J. S. Packard Dredging Co., 1 Cir., 1941, 120 F.2d 117. By the same token, such conduct is not to be excused as being *in extremis*. This doctrine is applicable only when the party asserting it was free from fault until the emergency arose.

Affirmed.