USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2479 BEREND J.D. HAVINGA, ET AL., Plaintiffs, Appellees, v. CROWLEY TOWING AND TRANSPORTATION COMPANY, Defendant, Appellant. ____________________ No. 93-1073 BEREND J.D. HAVINGA, ET AL., Plaintiffs, Appellants, v. CROWLEY TOWING AND TRANSPORTATION COMPANY, Defendant, Appellee. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen C. Cerezo, U.S. District Judge] ___________________ ____________________ Torruella, Cyr and Boudin, Circuit Judges. ______________ ____________________ J. Ramon Rivera-Morales, with whom Manolo T. Rodriguez-Bird ________________________ ________________________ and Jimenez, Graffam & Lausell were on brief for defendant Crowley ___________________________ Towing. Eugene F. Hestres, with whom Bird, Bird & Hestres and Jose F. __________________ _____________________ _______ Sarraga were on brief for plaintiffs Berend J.D. Havinga, et al. _______ ____________________ June 2, 1994 ____________________ CYR, Circuit Judge. This admiralty action stems from a CYR, Circuit Judge. _____________ nighttime collision approximately four miles off the island of Culebra, Puerto Rico, between the 65-foot sailboat GLORIA and a 262-foot barge under tow by the tugboat BORINQUEN, owned by defendant-appellant Crowley Towing and Transportation Co., Inc. The five plaintiffs, the captain and crew of the GLORIA, were forced to abandon her moments before the collision and were rescued several hours later. Following a ten-day trial in the United States District Court for the District of Puerto Rico, a jury found Crowley's negligence the sole cause of the collision, and awarded damages totalling $1,661,700.1 Judgment entered on July 24, 1992. On August 7, plaintiffs filed a motion to amend the judgment to provide for attorney fees, prejudgment interest, and extraordi- nary costs. As the Rule 59(e) motion was not served until August 11, it was summarily denied. See Fed. R. Civ. P. 59(e). ___ Meanwhile, Crowley had renewed its motion for judgment as a matter of law or for new trial, which the district court denied on November 18. See Fed. R. Civ. P. 50(b). Crowley now appeals ___ both the final judgment and the order denying its Rule 50(b) motion for new trial or for judgment as a matter of law. The plaintiffs cross-appeal from the denial of their Rule 59(e) motion to amend the judgment. ____________________ 1At the end of plaintiffs' case and again at the close of the evidence, Crowley unsuccessfully moved for judgment as a matter of law, see Fed. R. Civ. P. 50(a), on the issue of compar- ___ ative fault. 2 I I DISCUSSION DISCUSSION __________ A. THE CROWLEY APPEAL A. THE CROWLEY APPEAL __________________ 1. Liability 1. Liability _________ On appeal, Crowley contends, inter alia, that the _____ ____ special jury verdict on liability is contrary to the evidence on comparative fault. a. Standard of Review a. Standard of Review __________________ Absent a controlling error of law, which we review de __ novo, see Stauble v. Warrob, Inc., 977 F.2d 690, 693 (1st Cir. ____ ___ _______ _____________ 1992), an order denying a new trial will be reversed only if the verdict was against the clear weight of the evidence, viewed in the light most favorable to the prevailing party, or would work a clear miscarriage of justice, Phav v. Trueblood, 915 F.2d 764, ____ _________ 766 (1st Cir. 1990). As Crowley asserts no error of law, we review only for abuse of discretion. Id. ___ A federal court may not set aside a jury verdict and direct the entry of a contrary verdict unless no reasonable jury could have returned a verdict adverse to the moving party. See ___ Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993). In making ____________ ______ this determination, we examine the evidence in the light most favorable to the nonmoving party, drawing all reasonable infer- ences in its favor. Cochrane v. Quattrocchi, 949 F.2d 11, 12 n.1 ________ ___________ (1st Cir. 1991), cert. denied, U.S. , 112 S. Ct. 2965 ____ ______ _____ _____ 3 (1992); Keisling v. Sea-Jobs for Progress, Inc., F.3d , ________ ___________________________ ___ ___ _ , No. 93-1406, 1994 WL 92055, at *3 (1st Cir. March 29, 1994). b. Violation of COLREGS b. Violation of COLREGS ____________________ Appellant Crowley argues that the failure of the GLORIA's crew to take appropriate evasive action or to call the captain in time to avoid the collision violated the International Regulations for Preventing Collisions at Sea (COLREGS).2 As the evidence supports the special verdict absolving plaintiffs of fault, we reject Crowley's challenge. Plaintiffs' expert, Captain Jose Rivera Tolinche, a master mariner, testified that the GLORIA followed proper col- lision-avoidance procedure.3 Captain Rivera stated that the GLORIA was placed "in extremis" through no fault of her own. The __ ________ in extremis rule provides that "where one ship has, by wrong __ ________ manoeuvres, placed another ship in a position of extreme danger, ____________________ 2Crowley's allegations that the GLORIA violated the COLREGS implicate the admiralty causation presumption under the "Pennsyl- vania Rule." See The Pennsylvania, 86 U.S. (19 Wall.) 125, 136 ___ _________________ (1874). Under the Pennsylvania Rule, a vessel shown to be in actual violation of a collision-prevention rule bears the burden of proving that her fault could not have been a contributing _____ ___ cause of the accident. See Capt'n Mark v. Sea Fever Corp., 692 ___ ___________ ________________ F.2d 163, 167 (1st Cir. 1982). 3Since the sailboat GLORIA was the "privileged" vessel, see ___ COLREGS, Rule 18(a)(iv) (power-driven vessel shall keep out of way of sailing vessel), the "default passing rule" required her to hold course and speed, id. Rule 17(a)(i), until it became ___ apparent that the BORINQUEN, the "burdened vessel," was not taking appropriate action to avoid collision, at which time the GLORIA was allowed to manoeuvre to avoid collision, id. Rule ___ 17(a)(ii). At the point at which the collision could no longer be avoided by unilateral action on the part of the BORINQUEN, the GLORIA was required to take action to avoid a collision. See id. ________ ___ ___ Rule 17(b). 4 that other ship will not be held to blame if she has done some- thing wrong." Puerto Rico Ports Auth. v. M/V Manhattan Prince, ________________________ _____________________ 897 F.2d 1, 6 (1st Cir. 1990) (citations omitted).4 Thus, there was sufficient evidence to support the finding that plaintiffs did not fail to follow any collision-avoidance procedure required under the COLREGS before the GLORIA had been placed in extreme danger, at which point any subsequent mistake on her part was excused. See id. ("the judgment of a competent sailor in extre- ___ ___ __ ______ mis cannot be impugned").5 ___ ____________________ 4Though Crowley does not challenge the special verdict ____ ___ _________ finding that the BORINQUEN placed the GLORIA in extremis, it __ ________ claims that the in extremis doctrine does not apply because the __ ________ GLORIA placed herself in extreme danger. See Bucolo, Inc. v. S/V ___ ____________ ___ JAGUAR, 428 F.2d 394, 396 (1st Cir. 1970) (in extremis applicable ______ __ ________ only when party asserting it was free from fault until emergency arose). Crowley's argument is foreclosed on appeal, however, by Captain Rivera's testimony, which formed an adequate basis for the jury finding that "the tug BORINQUEN place[d] the GLORIA, through no fault of her own, in a position of extreme danger . _______ __ _____ __ ___ ___ . . ." (Emphasis added). 5Crowley now contends, for the first time, that plaintiffs' conceded failure to establish radio contact with the BORINQUEN violated COLREGS, Rule 2 (in complying with COLREGS, due regard shall be had to all dangers of navigation and collision), since the watch aboard the GLORIA sighted the BORINQUEN approximately thirty-five minutes prior to the collision. The failure to raise this argument below effected its waiver. See Wells Real Estate ___ __________________ v. Greater Lowell Bd. of Realtors, 850 F.2d 803, 810 (1st Cir.) ______________________________ ("We do not reach the issue of the sufficiency of the evidence, however, because plaintiff's counsel failed to move for [judgment as a matter of law under Rule 50(a)] in the district court . . . The motion must also be made with sufficient specificity to allow ___ ______ ____ ____ __ ____ ____ __________ ___________ __ _____ the district judge to understand precisely why the evidence is ___ ________ _____ __ __________ _________ ___ ___ ________ __ insufficient. Appellate review may be obtained only on the ____________ _________ ______ ___ __ ________ ____ __ ___ specific ground stated in the motion") (emphasis added), cert. ________ ______ ______ __ ___ ______ _____ denied, 488 U.S. 995 (1988), (citing Pstragowski v. Metropolitan ______ ___________ ____________ Life Ins. Co., 553 F.2d 1, 3 (1st Cir. 1977)). ____ ____ ___ 5 c. Failure to Use Reasonable Care c. Failure to Use Reasonable Care ______________________________ Crowley claims that a finding of negligence was "man- dated" because some plaintiffs lacked seafaring experience and "did not have much time to couple together as a crew." The plaintiffs testified to their training and experience.6 Captain Rivera offered the professional opinion that plaintiffs were qualified for their respective positions aboard the GLORIA, based on their backgrounds and experience. Thus, in addition to Crowley's failure to establish a causal relationship between the collision and any alleged negligence on the part of the crew, there was adequate support for a jury finding that the crew, individually and collectively, possessed the requisite competence and qualifications. d. Unseaworthiness d. Unseaworthiness _______________ Crowley further claims that the GLORIA was unseaworthy, as the evidence established that her engine failed to function when plaintiffs attempted to start it immediately prior to the collision. Thus, Crowley argues, plaintiffs incurred contributo- ry fault. See Gertrude Parker, Inc. v. Abrams, 178 F.2d 259 (1st ___ _____________________ ______ Cir. 1949) ("unseaworthiness" is ground for liability in marine casualty). The record nonetheless substantiates the special ____________________ 6Captain Havinga is a licensed deck officer in the Dutch Merchant Marine, and a Royal Dutch Navy officer. Hagemann is a German-certified able seafarer, whose ten years of sailing experience included many voyages as a crewman, and one or two trips as the skipper of a vessel similar to the GLORIA. Stach and Van der Ark had taken courses in basic seamanship. Paschedag had served as a crewmember on at least three prior sailing voyages in Europe and the Caribbean, including a two-week stint in the Aegean Sea. 6 verdict on comparative fault. Hagemann, an experienced mechanic, testified to proper maintenance and repair of the engine. Captain Rivera provided expert testimony that the GLORIA was seaworthy. As Crowley has neither shown that the special verdict on comparative fault was against the clear weight of the evi- dence, nor that the district court erred in denying the Rule 50(b) motion for judgment as a matter of law, the liability judgment against Crowley must stand. 2. Damages 2. Damages _______ Crowley challenges the amount of damages awarded for economic loss, pain and suffering, and loss of enjoyment of life, as well as the district court order denying its motion for new trial on damages or for a remittitur. Crowley argues that the damages awarded for economic loss exceed any rational evaluation of the evidence, see Kolb v. Goldring, Inc., 694 F.2d 869, 871 ___ ____ _______________ (1st Cir. 1982), and that the awards for noneconomic injuries are so grossly excessive as to "shock the conscience," see McDonald ___ ________ v. Federal Labs., Inc., 724 F.2d 243, 246 (1st Cir. 1984) (citing ___________________ Gruenthal v. Long Island R.R. Co., 393 U.S. 156, 159 (1968)). _________ ____________________ a. Standard of Review a. Standard of Review __________________ Though notoriously difficult to quantify, see Rivera v. ___ ______ Rederi A/B Nordstjernan, 456 F.2d 970, 975 n.8 (1st Cir.), cert. ________________________ _____ denied, 409 U.S. 876 (1972), noneconomic damages, such as pain ______ and suffering and loss of enjoyment of life, "are not immune from appellate review," Anthony v. G.M.D. Airline Servs., 17 F.3d 490, _______ _____________________ 7 494 (1st Cir. 1994) (citations omitted). But appellant bears the 8 heavy burden of establishing that an award is "grossly excessive, inordinate, shocking to the conscience of the court or so high that it would be a denial of justice to permit it to stand." McDonald, 724 F.2d at 246 (citations omitted). We will not ________ disturb an award of damages merely because it is "extremely generous, or [because] had we been deciding, we would have found the damages to be considerably less," Williams v. Martin Marietta ________ _______________ Alumina, Inc., 817 F.2d 1030, 1038 (3d Cir.) (citations omitted), _____________ cert. denied, 484 U.S. 913 (1987), cited with approval in Antho- _____ ______ ______________________ ______ ny, 17 F.3d at 494. Rather, we will reverse an award only if it __ is so grossly disproportionate to any injury established by the ________________ __ ___ ______ ___________ __ ___ evidence as to be unconscionable as a matter of law. See Milone ________ ___ ______ v. Moceri Family, Inc., 847 F.2d 35, 37 (1st Cir. 1988); Marchant ___________________ ________ v. Dayton Tire & Rubber Co., 836 F.2d 695, 704 (1st Cir. 1988); _________________________ Wagenmann v. Adams, 829 F.2d 196, 200-01 (1st Cir. 1987); Bonn v. _________ _____ ____ Puerto Rico Int'l Airlines, Inc., 518 F.2d 89, 94 (1st Cir. ___________________________________ 1975). b. Pain and Suffering and Loss of b. Pain and Suffering and Loss of Capacity for Enjoyment of Life Capacity for Enjoyment of Life ______________________________ The lion's share (97%) of the challenged awards was for "pain, suffering and loss of capacity for enjoyment of life."7 ____________________ 7The individual awards were as follows: Pain/ Pain/ Suffering, Suffering, Lost Personal Medical Lost Lost Personal Medical Lost Enjoyment Effects Expenses Earnings Enjoyment Effects Expenses Earnings _________ _______ ________ ________ Havinga: $450,000 $27,000 $2,500 0 Havinga: _______ Stach: $400,000 $32,400 $1,500 0 Stach: _____ 9 See Room v. Caribe Hilton Hotel, 659 F.2d 5, 8 n.3 (1st Cir. ___ ____ ___________________ 1981) (pain and suffering); Gutierrez-Rodriguez v. Cartagena, 882 ___________________ _________ F.2d 553, 580 (1st Cir. 1989) (loss of enjoyment of life). The special verdict forms did not differentiate between "pain and suffering" and "loss of enjoyment of life." Further, there was no objection to the jury charge, which lumped all alleged forms of noneconomic injury: "If you find . . . for the plaintiffs you should compensate them for any bodily injury, any resulting pain or suffering, mental anguish and loss of capacity for the enjoy- ment of life experiences in the past, and which you find from the evidence that they are reasonably certain to suffer [i]n the future from the injury in question." Further, in closing argu- ment, plaintiffs' counsel appealed to the jury as follows, without objection: "You have the opportunity to compensate these five plaintiffs for the loss of the quality of their life. Something was taken from them on April 12, 1989, and you cannot return that . . . But you can try to compensate fairly and justly for all their losses, for all their pain, for all their suffering, for the loss of the quality of life, for the three years that they have had to wait until they finally came here . . . ." ____________________ Van der Ark: $200,000 $ 2,300 0 0 Van der Ark: ___________ Hagemann: $300,000 $ 9,400 $7,000 0 Hagemann: ________ Paschedag: $200,000 $15,600 $7,000 $7,000 Paschedag: _________ No award was made for future medical expenses. See infra note ___ _____ 15. 10 Viewed in the light most favorable to the challenged awards, see Toucet v. Maritime Overseas Corp., 991 F.2d 5, 11 ___ ______ ________________________ (1st Cir. 1993), the evidence relating to damages was as follows. Plaintiffs Hagemann and Paschedag, who were standing watch aboard the GLORIA, first saw the BORINQUEN's running lights at approxi- mately 2:55 a.m. As the BORINQUEN changed course at 3:24 a.m., Hagemann anticipated that she would pass on the GLORIA's port side in accordance with the COLREGS. As Hagemann soon realized, however, the BORINQUEN instead was assuming a collision course with the GLORIA, so he attempted to bring the GLORIA to star- board. Unable to steer the GLORIA clear of the BORINQUEN without motor power, Hagemann tried unsuccessfully to start her engine. Paschedag frantically attempted to signal the BORINQUEN with an air horn and a marine light, to no avail. Hagemann then yelled for Captain Havinga and the two other crew members, who were asleep below. Although Havinga quickly came on deck, by the time he could take the helm and attempt evasive maneuvers the BORIN- QUEN was within 60 feet and coming on "very fast."8 ____________________ 8The parties stipulated that the BORINQUEN changed course at 3:24 a.m. There was testimony that this course change placed the GLORIA in extremis. The helmsman of the BORINQUEN testified that __ ________ the course change took "about five minutes," "more or less." At some point between 3:24 and 3:30, Hagemann recognized that the tug was assuming a collision course, placing the GLORIA in __ extremis. Thus, as approximately one minute passed between the ________ narrow miss by the BORINQUEN and the first impact with the tow barge (at 3:30), the jury reasonably could have found that the GLORIA had no more than two to three minutes within which to attempt to avoid the collision. 11 The BORINQUEN herself narrowly missed the GLORIA. As the vessels passed, however, a 200-meter steel tow cable connect- ing the BORINQUEN with its 262-foot tow barge scraped along the deck of the GLORIA, crushing objects in its path. As the huge barge bore down on the 65-foot GLORIA, plaintiffs could only await the impending collision in helpless panic.9 Moments before the initial impact at 3:30 a.m., Havinga, fearing that the GLORIA would be dragged under the barge, ordered the crew over- board. Before the men could respond, however, they were knocked off their feet by the force of the first of three collisions between the barge and the GLORIA. The GLORIA swayed 90 degrees to the horizontal several times before righting herself, and rapidly drifted away. The plaintiffs could see the helmsman aboard the BORINQUEN as the barge passed them in the water, but were unable to attract attention aboard the BORINQUEN. Eventually the five plaintiffs made it to a small rubber dinghy which Stach had managed to throw from the GLORIA, her life boat having been lost in the collision. Due to their confusion and panic, as well as the darkness and rough seas, the crew had great difficulty reaching the dinghy, and Stach and Paschedag nearly drowned. The dinghy was large enough for only two or three persons, and the five plaintiffs were piled two- deep. Havinga, Van der Ark, and Stach had lost all their cloth- ing, and shared the little clothing worn by Hagemann and Pas- ____________________ 9Approximately sixty seconds elapsed between the passing of the BORINQUEN itself and the GLORIA's initial impact with the trailing barge. See supra note 8. ___ _____ 12 chedag. The men shivered uncontrollably, their situation made more miserable by Havinga's incontinence and the sea swells washing over the sides of the dinghy. At trial, each plaintiff testified to his own experi- ence and emotional state, including shock, hysteria, panic, desperation, and fear of death. All were concerned about sharks. Due to his merchant marine experience, Havinga realized (and advised Hagemann) that sharks often follow barges to feed on scraps lost overboard. Their fears were reinforced when Van der Ark and others observed fins around and beneath the dinghy. The men knew that even a glancing contact with a shark's rough exterior could puncture and sink the rubber dinghy. At the first appearance of sharks, therefore, further efforts at paddling the dinghy were abandoned. While awaiting rescue, on several occa- sions plaintiffs experienced elation upon seeing an approaching vessel (one within 300 yards), only to have their hopes dashed as each vessel passed in the darkness. Approximately four and one- half hours after the collision, plaintiffs were rescued by the tug FAJARDO. The individual plaintiffs testified to their pain and suffering and loss of enjoyment of life following the accident. Dr. Jose Fumero, plaintiffs' examining psychiatrist, testified, without objection, that the plaintiffs all suffered from acute post-traumatic stress disorder (PTSD),10 a direct result of the ____________________ 10Dr. Fumero testified that PTSD is an acknowledged anxiety disorder, see American Psychiatric Assoc., Diagnostic and Statis- ___ ______________________ tical Manual of Mental Disorders, Third Edition, Revised, 247-49 _________________________________________________________ 13 accident. Dr. Fumero described the emotional injuries sustained by each plaintiff, and testified to a "Global Assessment of Function" (GAF) for each plaintiff, ranging from zero (virtual vegetative state) to ninety (high function).11 The district court instructed the jury to consider plaintiffs' pain and suffering, as well as any loss of "enjoyment of life experiences in the past, and which you find from the ____ evidence that they are reasonably certain to suffer [i]n the future." (Emphasis added). See, e.g., Gutierrez-Rodriguez, 882 ______ ___ ____ ___________________ F.2d at 580 (upholding damages awarded for loss of enjoyment of life; 1983 action); Downie v. U.S. Lines Co., 359 F.2d 344, 348 ______ ______________ (3d Cir.) (same; admiralty), cert. denied, 385 U.S. 897 (1966). _____ ______ In argument, plaintiffs' counsel focused particularly on Dr. Fumero's uncontroverted testimony relating to plaintiffs' loss of emotional function since the accident, and on the adverse impact this would continue to have on the quality of their lives.12 ____________________ (1987), caused by trauma beyond the range of normal human exper- ience which results in such symptoms as reexperiencing the traumatic event; a tendency to avoid stimuli associated with the trauma; numbing of general responsiveness; and increased arousal (i.e., difficulty falling or remaining asleep; irritability or ____ outbursts of anger; difficulty concentrating; hypervigilance; exaggerated startle response; physiologic reactivity upon expo- sure to events reminiscent of the event (e.g., a woman previously ____ raped in an elevator begins to perspire profusely upon entering an elevator)). See id. at 250. ___ ___ 11According to Dr. Fumero, the GAF assesses and compares an individual's current level of emotional function with his pre- accident level of function. 12With respect to the severity of their injuries, Dr. Fumero testified to the diminishment in each plaintiff's pre-accident emotional function as a result of the accident: Havinga (from 90 to 65); Stach (75 to 50); Van der Ark (85 to 60); Hagemann (90 to 14 Thus, the evidence, argument, and the unchallenged charge allowed the jury considerable latitude to award substantial sums as non- economic damages to compensate plaintiffs not only for their loss of enjoyment of life during the three years immediately after the accident, but into the indefinite future. See Gutierrez-Rodri- ___ ________________ guez, 882 F.2d at 580; Kokesh v. American Steamship Co., 747 F.2d ____ ______ ______________________ 1092, 1095 (6th Cir. 1984) (substantial award "may also reflect the evidence that [plaintiff's] . . . ability to enjoy life has been impaired") (admiralty case). Contrary to Crowley's attempt on appeal to characterize these awards almost exclusively as compensation for pain and suffering experienced at and immediately after the accident, the noneconomic damages are largely supportable simply on the un- controverted trial evidence that each plaintiff had already experienced substantial deficits in emotional function and loss of enjoyment of life which could be expected to continue into the indefinite future. Viewed in the light most favorable to the verdicts, Fumero's testimony reasonably enabled the jury to find that none of the plaintiffs had regained normal emotional func- ____ tion by the time of trial and that though Havinga, Stach, and Van der Ark may continue to improve, it is uncertain whether they ____________________ 60); Paschedag (85 to 55). Dr. Fumero described a GAF of 65 as "very, very low." Crowley argues that the amounts awarded to the individual plaintiffs were disproportionate to their respective GAFs. Dr. Fumero explained, however, that it is misleading to compare GAFs between individuals. The GAF compares an indi- vidual's current emotional function to his pre-accident capacity. Moreover, the jury was entitled to weigh all the evidence in ___ assessing the individual awards, not merely the GAFs. 15 will ever recover their pre-accident levels of emotional func- tion. The uncontroverted evidence also revealed that Hagemann and Paschedag "had stabilized" well below their pre-accident levels of emotional function and could expect no further "bene- fits of improvement."13 Crowley chose to present no expert testimony on loss of emotional function, loss of enjoyment of life, or pain and suffering, nor did it challenge the jury instruction on these noneconomic damages. After a careful review of the record, see Coy v. ___ ___ Simpson Marine Safety Equip., Inc., 787 F.2d 19, 27 (1st Cir. ___________________________________ 1986), we are unable to say that these noneconomic damages, though generous to be sure, were so disproportionate to the uncontroverted evidence of "pain and suffering," severe emotional injuries, and loss of enjoyment of life, as to shock the con- science. See, e.g., Joia v. Jo-Ja Serv. Corp., 817 F.2d 908, ___ ____ ____ __________________ 918-19 (1st Cir. 1987) (while $250,000 award, exclusively for "pain and suffering," was "very high," it was supported by sufficient evidence so as not to shock the conscience), cert. _____ denied, 484 U.S. 1008 (1988). The evidence was sufficient to ______ establish that plaintiffs' emotional and psychological injuries ____________________ 13Crowley suggests that the jury acted irrationally by returning the two smallest noneconomic damages awards to Hagemann and Paschedag, the two plaintiffs with the greatest GAF differen- tial at the time of trial. However, GAF differential was not the only evidence going to noneconomic damages. The jury heard Dr. Fumero's detailed clinical descriptions of the individual plain- tiffs' mental health, as well as each plaintiff's testimony about his own emotional response. And, of course, the jury was enti- tled to weigh all the evidence going to each component of non- economic damages. 16 were severe, "significantly affected" the quality of their lives, and caused each to avoid activities in which he had engaged.14 Cf. Anthony, 17 F.3d at 494 ($566,765 award, exclusively for ___ _______ ___________ "pain and suffering," held grossly disproportionate, absent, inter alia, any "evidence [that plaintiff's] injury has rendered _____ ____ ________ him unable to perform any particular functions or engage in any particular activities [or] otherwise interfered with his profes- sional, recreational, or personal life") (emphasis added); Marchant, 836 F.2d at 703-04 ($550,000 pain and suffering award ________ unconscionable when, inter alia, injury did not cause plaintiff _____ ____ significant financial losses). Further, the jury could have found that plaintiffs' post-traumatic stress disorders were permanent and chronic.15 Cf. Anthony, 17 F.3d at 494 ("pain ___ _______ ____________________ 14Dr. Fumero also testified that the plaintiffs' PTSD was "directly related" to the accident involving the GLORIA. Cf. ___ Bonn, 518 F.2d at 93-94. In Bonn, the plaintiffs were three ____ ____ children whose parents had been killed in a plane crash. We found that a $1,045,000 "pain and suffering" award to the chil- dren was "unconscionable," in significant part because their emotional injuries were not directly related to their parents' death. Id. at 94 ("[t]estimony and pre-accident reports conclu- ___ _______ sively establish that the children exhibited many of their ______ present emotional problems before their parents' death." (Empha- sis added)). There was evidence that all these plaintiffs have greater fear of the sea; Havinga and Stach now avoid stressful profes- sional and personal situations; Hagemann suffered financial, personal, and sexual problems; Van Der Ark has experienced a lessening of academic interest; and Paschedag, who sustained the greatest loss of emotional function, was unable to work for approximately five months. 15Crowley argues that since no plaintiff was awarded damages for future medical expenses, and each received only a small award ______ _______ ________ for past medical expenses, there was no evidence of "substantial long term injuries" sufficient to justify the awards. On the contrary, the jury reasonably could have awarded noneconomic ___________ damages for past "pain and suffering" and emotional injury, and _______ 17 and suffering" award vacated because, inter alia, there was "no _____ ____ testimony or other evidence that [plaintiff's] current condition is permanent"). Although Crowley now challenges its weight, Dr. Fu- ______ mero's expert testimony as to each plaintiff's PTSD and loss of emotional function was admitted without objection and went uncontroverted at trial. Thus, the jury was entitled to credit ______________ this testimony fully. Gutierrez-Rodriguez, 882 F.2d at 579 ___________________ ("Against [the plaintiff's expert's] evidence, the defendants offered no contradictory testimony. The . . . facts were uncon- troverted and the jury was entitled to accept all of them"). See ___ also Fed. R. Civ. P. 35(a) (permitting, on motion and for good ____ cause, psychological examination of party when mental state in controversy). Crowley merely argues that the awards for non- economic injuries are so disproportionate to the damages compen- sating plaintiffs for their medical expenses as to render the awards grossly excessive, citing Betancourt v. J.C. Penney Co., __________ _______________ 554 F.2d 1206, 1209 (1st Cir. 1977) (vacating jury award where noneconomic damages were 120 times greater than economic damages ____________________ for permanent "loss of capacity for enjoyment of life," without concluding that future medical treatment was indicated. See, ___ e.g., Dunn v. Penrod Drilling Co., 660 F. Supp. 757, 770-71 (S.D. ____ ____ ___________________ Tex. 1987) (awarding $110,000 for past and future pain and suffering, but declining to award damages for medical expenses) (admiralty case). Crowley also maintains that the awards were excessive because each plaintiff showed improvement by the time of trial. Of course, improvement would not preclude an award for "pain and suffering," loss of emotional function, and loss of enjoyment of life already experienced during the three years following the ___________ accident. Nor would it preclude an award for loss of emotional function and enjoyment of life in the future. 18 because award "simply makes no sense") (applying Puerto Rico law). While the relationship among its various components may be considered in evaluating the total award, see id., the primary ___ ___ teaching in our cases is that damages not be grossly dispropor- tionate to the injury. See Laaperi v. Sears, Roebuck & Co., 787 ______ ___ _______ ____________________ F.2d 726, 735 (1st Cir. 1986). In this case, the uncontroverted evidence of severe PTSD, accompanied by substantial pain and suffering and loss of enjoyment of life brought on by diminished emotional function, which may well prove permanent, takes this case out of the Betancourt mode.16 __________ Finally, Crowley claims these awards are grossly excessive compared to awards in other cases. As we have ex- plained, "the paramount focus in reviewing a damage award must be the evidence presented at trial . . . . Absent a most unusual ________________________________ case . . . we cannot imagine overturning a jury award that has substantial basis in the evidence." Gutierrez-Rodriguez, 882 ___________________ F.2d at 579 (citations omitted) (emphasis added). An examination of other awards upheld in our case law suggests no sufficient basis for upsetting the present awards. See id. at 579-80 ___ ___ (explaining that a jury award will not be overturned "merely because the amount of the award is somewhat out of line with other cases of similar nature.") Indeed, our research has ____________________ 16For example, there was evidence in Betancourt that if the __________ plaintiff had been willing to undergo treatment for a three-month period, "she would feel 'just about completely well in her initial condition . . . [and] will heal and live a normal life almost free of pain.'" 554 F.2d at 1208. Not only is there no such evidence here, but the modest injuries sustained in Bet- ____ ancourt were exclusively physical. _______ 19 disclosed no sufficiently similar case to suggest, let alone persuade, that these awards for noneconomic damages are so excessive as to require retrial or remittitur.17 c. Economic Damages c. Economic Damages ________________ We must now determine whether the damages awarded for economic loss have "adequate evidentiary support." Segal v. _____ Gilbert Color Sys., Inc., 746 F.2d 78, 81 (1st Cir. 1984) (cita- _________________________ tion omitted). We will uphold an award for economic loss provid- ed it does not "violate the conscience of the court or strike such a dissonant chord that justice would be denied were the judgment permitted to stand," Milone, 847 F.2d at 37. Under ______ these standards, we examine the evidence in detail, see Gru- ___ ____ nenthal, 393 U.S. at 159 (appellate court must make "detailed _______ appraisal of the evidence bearing on damages"), and in the light most favorable to plaintiffs, Toucet, 991 F.2d at 11. ______ Crowley challenges the awards for past medical expens- es, loss of personal effects, and lost earnings, see supra note ___ _____ 7, as unsupported by the evidence. We agree in part. The awards ____________________ 17For example, Crowley cites cases in which lesser amounts were awarded for "pain and suffering" experienced by seamen who perished at sea. See, e.g., Brown v. United States, 615 F. Supp. ___ ____ _____ _____________ 391 (D.Mass. 1985), rev'd. on other grounds, 790 F.2d 199 (1st ________________________ Cir. 1986), cert. denied, 479 U.S. 1058 (1987); Bergen v. F/V St. ____ ______ ______ _______ Patrick, 816 F.2d 1345 (9th Cir.), cert. denied, 493 U.S. 871 _______ ____ ______ (1987). This anomaly is due, in large part, to the presumed brevity of the pain and suffering experienced before the de- cedent's demise, which is separate and apart from an award for wrongful death. Moreover, as explained above, see supra at ___ _____ pp.14-15, the noneconomic damages in this case were not limited to "pain and suffering" at and immediately after the accident, but included sustained emotional injuries, including PTSD and plaintiffs' sustained and/or permanent loss of emotional func- tion. 20 for past medical expenses and lost earnings are well documented in the record. On the other hand, the individual awards for loss of personal effects (except for the Van der Ark award) exceed the amounts to which plaintiffs testified at trial: Havinga ($5,500 loss, awarded $27,000); Stach ($17,600 loss, awarded $32,400); Hagemann ($5,600 loss, awarded $9,400); Paschedag ($7,000 loss, awarded $15,600). As there was no other relevant evidence, these awards must be pared.18 See Kolb, 694 F.2d at 871 (award for ___ ____ purely economic damages is excessive as a matter of law if unsupportable on any rational view of the evidence); Segal, 746 _____ F.2d at 81 (same). Therefore, absent a remittitur, we must remand for a new trial on damages relating to loss of personal effects. See ___ Anthony, 17 F.3d at 495. Since the trial record clearly disclos- _______ es the maximum amount of damages recoverable for loss of personal effects, however, we can calculate the remittitur ourselves. Id.; Kolb, 694 F.2d at 875 (as defects in award "are readily ___ ____ ____________________ 18Plaintiffs argue that a chart attached to their brief supports the awards. The chart merely lists the total economic damages claimed by each plaintiff, with no hint as to how the total figure was derived. Plaintiffs concede that the chart was not admitted in evidence. Thus, it merely served as a visual aid. See Jack B. Weinstein & Margaret A. Berger, 5 Weinstein's ___ ___________ Evidence 1006[7] (Sept. 1983) (chart itself not evidence unless ________ admitted under Fed. R. Evid. 1006). Consequently, the chart could provide no evidentiary support for the awards. Finally, plaintiffs neither point to, nor have we found, any record support for these awards for loss of personal effects, other than plaintiffs' testimony. 21 identified and measured," remittitur more appropriate than new trial).19 We therefore order a new trial on damages claimed by plaintiffs Havinga, Stach, Hagemann, and Paschedag for the loss of their personal effects and belongings, unless these plain- tiffs, respectively, remit $21,500, $14,800, $3,800, and $8,600, in which event their judgments shall stand affirmed as modified. See id.; 11 Charles A. Wright & Arthur R. Miller, Federal Prac- ___ ___ _____________ tice and Procedure 2820, at 133-134 (1973 & Supp. 1993). __________________ B. THE CROSS-APPEAL B. THE CROSS-APPEAL ________________ The plaintiffs cross-appeal from the denial of their motion for attorney fees and extraordinary costs,20 and their Rule 59(e) motion for prejudgment interest. Their claims are un- availing.21 ____________________ 19Under the "maximum recovery" rule, we may condition a new trial on the acceptance of a remittitur based on the highest award supported by the evidence. See Liberty Mut. Ins. Co. v. ___ ______________________ Continental Cas. Co., 771 F.2d 579 588-89 (1st Cir. 1985); see _____________________ ___ also Marchant, 836 F.2d at 704 (noting adoption of "maximum ____ ________ recovery" rule). 20Plaintiffs requested attorney fees, extraordinary costs, and prejudgment interest in their Rule 59(e) motion to alter or amend judgment. Motions for attorney fees are governed by Fed. R. Civ. P. 54(d)(2), see also White v. New Hampshire Dept. of ___ ____ _____ ________________________ Emp. Secur., 455 U.S. 445 (1982) (pre-Rule 54(d)(2) case holding ___________ motion for attorney fees under 28 U.S.C. 1988 not barred by Rule 59(e) time limits), as are costs, see Buchanan v. Stanships, ___ ________ __________ Inc., 485 U.S. 265, 267 (1988) (per curiam) (application for ____ costs properly viewed as Rule 54(d) motion). These requests for fees and costs were timely under Rule 54(d)(2)(B). See id. On ___ ___ the other hand, the claim for prejudgment interest is governed by Rule 59(e). See Osterneck v. Ernst & Whinney, 489 U.S. 169, 175 ___ _________ _______________ (1989). 21Crowley argues that the cross-appeal is untimely. See ___ Fed. R. App. P. 4(a)(3) (cross-appeal may be taken within 14 days after a timely notice of appeal, or as otherwise provided by Rule __ 22 Though plaintiffs claim on appeal that attorney fees were warranted on the ground that Crowley engaged in litigation tactics born of "premeditated bad faith," they adduced no sup- porting evidence below. The record would not support a finding of bad faith or fraudulent litigation tactics such as the Supreme Court has found sufficient to warrant an award of attorney fees as a sanction under the "inherent power" of the court. See ___ Chambers v. NASCO, Inc., 501 U.S. 32, ___, 111 S. Ct. 2123, 2140 ________ ___________ (1991). We therefore find no abuse of discretion. See Papas v. ___ _____ Hanlon, 849 F.2d 702, 703 (1st Cir. 1988); FDIC V. Sumner Finan- ______ ____ _____________ cial Corp., 602 F.2d 670, 683 (5th Cir. 1979) (holding that where __________ bad faith is not "directly inferable from record," district court did not abuse discretion in denying motion for extraordinary costs and attorney fees). Lastly, plaintiffs filed their Rule 59(e) motion for prejudgment interest with the district court on August 7, 1992, but did not mail it to Crowley until August 11, see Fed. R. Civ. ___ P. 5(b) ("[s]ervice by mail is complete upon mailing"), more than ten days (excluding intermediate weekends and the date on which the order was entered, Fed. R. Civ. P. 6(a)) after the judgment had been entered on July 24. Since the Rule 59(e) motion was ____________________ 4(a)). Crowley filed its notice of appeal on December 11, 1992. On December 31, plaintiffs asked the district court to extend the time for filing their cross-appeal, alleging that they had not been properly served with the Crowley notice of appeal, and that no party would be prejudiced by the late filing. By margin order, the court granted the extension. Fed. R. App. P. 4(a)(5) provides that the district court may extend the appeal period on motion filed within thirty days of the expiration of the original appeal period. 23 untimely, we lack jurisdiction to entertain the cross-appeal from the district court order denying the Rule 59(e) motion for an allowance of prejudgment interest. The ten-day time limitation under Rule 59(e) is jurisdictional. Feinstein v. Moses, 951 F.2d _________ _____ 16, 19 (1st Cir. 1991).22 The judgment in favor of plaintiff-appellee Van der Ark ___ ________ __ _____ __ __________________ ___ ___ ___ is affirmed. The judgment in favor of any plaintiff-appellee who __ ________ ___ ________ __ _____ __ ___ __________________ ___ fails to remit damages as follows: Havinga $21,500; Stach _____ __ _____ _______ __ _______ _______ _______ _____ $14,800; Hagemann $3,800; and Paschedag $8,600, within thirty _______ ________ ______ ___ _________ ______ ______ ______ days of entry of mandate, shall be vacated. The case is remanded ____ __ _____ __ _______ _____ __ _______ ___ ____ __ ________ for a new trial on economic damages for loss of personal effects ___ _ ___ _____ __ ________ _______ ___ ____ __ ________ _______ and belongings or for the entry of judgments reduced in accor- ___ __________ __ ___ ___ _____ __ _________ _______ __ ______ dance herewith. Costs are allowed to plaintiffs-appellees in No. _____ ________ _____ ___ _______ __ ____________________ __ ___ 92-2479 and to defendant-appellee in No. 93-1073. _______ ___ __ __________________ __ ___________ ____________________ 22Under settled admiralty law, moreover, plaintiffs' failure to request a jury instruction on prejudgment interest barred recovery. See Scola v. Boat Frances R., Inc., 618 F.2d 147, 150 ___ _____ ______________________ (1st Cir. 1980) (prejudgment interest is "discretionary in maritime personal injury cases, and the discretion must be exercised by the jury"). Plaintiffs also request appellate costs and damages under Fed. R. App. P. 38, characterizing Crowley's appeal as "frivo- lous." We disagree. Crowley not only prevailed in part but even its unsuccessful appellate claims are not fairly characterized as "frivolous." 24