Agnes VERA–LOZANO,
Plaintiff–Appellee,

v.

INTERNATIONAL BROADCASTING,
Defendant–Appellant.

No. 94–1608.

United States Court of Appeals,
First Circuit.

Heard Nov. 8, 1994.

Decided March 22, 1995.

Igor J. Domínguez–Pérez, with whom Igor J. Domínguez Law Offices, Hato Rey, PR, was on brief for appellant.

Charles S. Hey–Maestre, with whom Peter Berkowitz and Rick Nemcik–Cruz, Rio Piedras, PR, were on brief for appellee.

Before TORRUELLA, Chief Judge, BOUDIN, Circuit Judge, and BOYLE,* Senior District Judge.

BOYLE, Senior District Judge.

International Broadcasting Corporation (IBC) appeals a judgment based upon a jury verdict in favor of Agnes Vera–Lozano on her claims under Title VII of the Civil Rights Act of 1964 and Puerto Rico Laws 3 and 100. IBC claims that the district court committed reversible error when it denied IBC's Rule 50 motions for judgment as a matter of law. IBC also contends that the lower court improperly exercised supplemental jurisdiction over claims arising from Puerto Rico Laws 3 and 100. Finally, IBC claims that the lower court erred in awarding compensatory damages and excessive back pay. For the following reasons we affirm the court below.

## I. BACKGROUND

Appellee, Vera, filed a complaint with the Anti–Discrimination Unit of the Puerto Rico Department of Labor (UAD), alleging employment discrimination under Title VII of the Civil Rights Act of 1964. She duly notified the Appellant, IBC, who did not respond at that time. The UAD determined that probable cause existed for a discrimination suit based on sex and pregnancy.

The complaint in the action below was filed on June 2, 1992, in the United States District Court for the District of Puerto Rico. The complaint alleged claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and invoked the court's supplemental jurisdiction to hear claims arising under Puerto Rico Law 3, 29 P.R.L.A. § 467, et seq., and Law 100, as amended, 29 P.R.L.A. § 146, et seq. Jurisdiction was exercised pursuant to 28 U.S.C. §§ 1331, 2201 and 2202.

Vera was a full-time master control operator for Three Star Telecast Corp. (Three Star), which owned and operated Channel 18 from 1984 until December 21, 1990, when the station was taken over by IBC. The master control unit regulates the receiving and broadcasting of television transmissions.

* Of the District of Rhode Island, sitting by designation.

There were six master control operators at Three Star; Vera was the most senior.

Pedro Román–Collazo was at all relevant times President, General Manager, and owner of IBC. During Román's tenure, IBC purchased the permit to broadcast on Channel 18 as well as other assets of Three Star Telecast. Grisel Torres, an employee of IBC, became the general manager of Channel 18.

On December 21, 1990, the last day Three Star operated Channel 18, it laid off twenty employees, retaining only four. The new owner assured the dismissed former employees that they would be rehired. In fact, several days prior to the takeover, Torres, instructed Philbert Modeste, who had been retained by IBC to continue as the engineer in charge of the master control unit, to prepare a list of three former Three Star employees to be hired. That list included Vera. Modeste testified at trial that when he submitted the list to Torres, she told him that Vera was not eligible because "she was going to have a baby."

Vera gave birth on January 22, 1991. In early February, she went to Modeste seeking employment. He told her that he would contact Torres about a possible position for her. IBC, however, never contacted Vera despite the fact that the company was seeking a master control operator. Vera discovered that an opening existed at IBC from a newspaper advertisement. In response to this advertisement, Vera again contacted Modeste. Again, he asked her to resubmit her resume. IBC did not hire Vera. Instead, the position was filled by a man, Pablo Martínez, who had never worked for Three Star.

## II. RULE 50 MOTION

IBC made a Rule 50 motion for judgment as a matter of law at the close of Vera's case. IBC alleged that it was not covered by Title VII because it did not have the requisite number of employees. This motion was renewed after the close of the defendant's case.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee on account of gender or pregnancy. *See* 42 U.S.C. § 2000e–2. For the purposes of that statute "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e. Since IBC did not own the assets of Three Star until December 21, 1990, IBC cannot be an employer for that calendar year.

Section 2000e–2 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual ... because of such individual's ... sex." The record shows that Vera reapplied for her former position of master control unit operator on two separate occasions in 1991. IBC's denial of employment was ongoing during that time. The "current year" then, as defined by the statute, is 1991. *See Dumas v. Town of Mount Vernon, Ala.,* 612 F.2d 974, 979 n. 4 (5th Cir.1980).

IBC argues that part-time employees should be counted as employees for a given week only if they actually work all five days of that week. We considered this question in *Thurber v. Jack Reilly's Inc.,* 717 F.2d 633 (1st Cir.1983), and found the law in this circuit to be to the contrary. In *Thurber,* the defendant was a small bar in Cambridge, Massachusetts. *See id.* Although the defendant had only nine full-time employees, at least fifteen employees were on the payroll for more than twenty weeks during the relevant calendar year. *See id.* at 634. On any given day, only eleven of these employees reported for work. *See id.* We concluded that the defendant was an employer for the purposes of Title VII. *See id.* We reasoned that the relevant employees were not only those who were physically present at the bar each day, but all those who had an ongoing employment relationship with the employer during the requisite twenty weeks. *See id.* (citing *Pedreyra v. Cornell Prescription Pharmacies,* 465 F.Supp. 936, 941 (D.Colo. 1979); *Hornick v. Borough of Duryea,* 507 F.Supp. 1091, 1097 (M.D.Pa.1980)).

■ This reasoning is persuasive especially in light of Title VII's legislative history. While Congress did express concern for the over-regulation of small businesses, it appears to have adopted the definition of "employer" from the Unemployment Tax Act. *See* 100 Cong.Rec. S13087 (daily ed. June 9, 1964) (statement of Sen. Dirksen). An employee is counted under that statute for each day that an employment relationship exists regardless of whether the employee reported to work each day. *See* Rev.Rule 55–19, 1955–1 C.B. 496. As we noted in *Thurber*, although it is true that such a reading of the statute may bring within its ambit a number of truly "Mom and Pop" establishments, the burden on these businesses would not be a considerable one; simply put, they could not discriminate. *See Thurber* at 635.

Counting both part-time and full-time employees on the payroll during 1991, there is sufficient evidence on the record in the form of testimony of Vera and Román to support finding that IBC was an employer as defined by Title VII. For this reason we find that the district court's denial of the Rule 50 motions was not in error.

## III. SUPPLEMENTAL JURISDICTION

IBC contends that the district court improperly exercised supplemental jurisdiction over the claims arising under the Puerto Rico statutes.

In 1990, Congress enacted 28 U.S.C. § 1367, which granted federal courts "supplemental jurisdiction" or what had formerly been referred to as "pendent jurisdiction" and "ancillary jurisdiction." This section states that "in any civil action over which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case and controversy." 28 U.S.C. § 1367 (1993).

■ This statute codified the Supreme Court's analysis in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *See Sinclair v. Soniform, Inc.,* 935 F.2d 599, 603 (3d Cir.1991); *Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172, 1178 (S.D.N.Y.1992). The Court stated in *Gibbs* that a federal court may exercise supplemental jurisdiction over a state claim whenever it is joined with a federal claim and the two claims "derive from a common nucleus of operative fact" and the plaintiff "would ordinarily be expected to try them both in one judicial proceeding." *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138; *Brown v. Trustees of Boston University,* 891 F.2d 337, 356 (1st Cir.), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1989). The statute expressly states that a district court may refuse to exercise this jurisdiction if the state claim "substantially predominates over the claim or claims over which the district court has original jurisdiction" or "the claim raises a novel or complex issue of state law." 28 U.S.C. §§ 3567(c)(1), (c)(2).

IBC does not dispute that the federal and state claims arise out of the same set of facts. IBC's only argument is that the district court abused its discretion in exercising jurisdiction over the state claims because the state statutes have different standards of proof and may therefore confuse the jury.

■ Because the decision whether to exercise supplemental jurisdiction is left to the broad discretion of the district court, this decision will be disturbed only upon finding an abuse of discretion. *See Newman v. Burgin,* 930 F.2d 955, 963 (1st Cir.1991); *McCaffrey v. Rex Motor Transportation, Inc.,* 672 F.2d 246, 250 (1st Cir.1982). Here there is clearly no such abuse: the state claims do not predominate; Vera points to no novel issue of state law; and joint adjudication serves the interest of judicial economy and fairness. We therefore find that the district court properly exercised supplemental jurisdiction.

## IV. JURY TRIAL

IBC claims that the district court committed reversible error when it tried the case before a jury. The Constitution of Puerto Rico does not afford litigants in a civil action the right to trial by jury. IBC contends therefore that the district court erred in allowing a jury to determine facts needed to

decide the claims arising under the laws of Puerto Rico.

■ This claim is without merit. It is well accepted that the Seventh Amendment affords litigants in federal courts in Puerto Rico the right to trial by jury, notwithstanding the fact that the Constitution of Puerto Rico does not allow for juries in civil cases. *See Marshall v. Perez Arzuaga*, 828 F.2d 845, 849 (1st Cir.1987), *cert. denied, Avis Rent–A–Car of Puerto Rico, Inc. v. Marshall*, 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988); *LaForest v. Autoridad de las Fuentes Fluviales de P.R.*, 536 F.2d 443, 446 (1st Cir.1976); *see also Byrd v. Blue Ridge Cooperative*, 356 U.S. 525, 536–40, 78 S.Ct. 893, 900–02, 2 L.Ed.2d 953 (1958).

## V. DAMAGES

■ IBC maintains that the trial court erred by allowing the jury to award compensatory damages based on a retroactive application of the Civil Rights Act of 1991. However, the verdict form correctly allowed for an award of compensatory damages based on the violation of *either* federal or Puerto Rico law. Because the jury's finding that IBC violated Puerto Rico law would alone support the award of compensatory damages, the submission of the claim based on the Civil Rights Act, if incorrect, was harmless error and will not be disturbed on appeal. *See Shepp v. Uehlinger*, 775 F.2d 452, 456–57 (1st Cir.1985); *see also Gillentine v. McKeand*, 426 F.2d 717, 724 (1st Cir.1970).

■ IBC also complains that the amount of damages awarded for back pay is not supported by the evidence. IBC failed to raise this issue in the court below either during trial or in a post-verdict motion to set-aside the verdict. As a general rule a Court of Appeals will not consider an issue raised for the first time on appeal absent exceptional circumstances. *See Refuse and Environmental Systems, Inc. v. Industrial Servs.*, 932 F.2d 37, 41 (1st Cir.1991); *Mello v. K-Mart Corp.*, 792 F.2d 1228, 1233 (1st Cir. 1986). Here, there are no exceptional circumstances and thus we consider the issue to be waived.

■ Had IBC properly raised this issue below, the result would be unchanged. For the party seeking to attack the amount of jury-awarded damages, the applicable standard of review is daunting. We will not disturb an award of damages for economic loss "provided it does not 'violate the conscience of the court or strike such a dissonant chord that justice would be denied were the judgment permitted to stand.' " *See Havinga v. Crowley Towing and Transportation Co.*, 24 F.3d 1480, 1489 (1st Cir.1994) (quoting *Milone v. Moceri Family, Inc.*, 847 F.2d 35, 37 (1st Cir.1988)); *Linn v. Andover Newton Theological School, Inc.*, 874 F.2d 1, 6 (1st Cir.1989). "Generousness of a jury's award does not alone justify an appellate court in setting it aside." *Kolb v. Goldring, Inc.*, 694 F.2d 869, 871 (1st Cir.1982). Under this standard the court should "examine the evidence in detail ... and in a light most favorable to the plaintiff." *Havinga*, 24 F.3d at 1489.

■ There is ample support in the record for the jury's verdict as to back pay. IBC's main contention is that Vera failed to mitigate her damages by voluntarily resigning from a job as a receptionist in February of 1992. IBC claims that back pay should not be awarded during the period beginning with the date of her voluntary resignation until the date the judgment was entered. We will not supplant the jury's verdict nor second-guess what may have been their thought process regarding the voluntary nature of Vera's resignation or her efforts to mitigate. This reluctance is especially appropriate in light of evidence, in the form of Vera's testimony, supporting a possible finding that the receptionist job provided no additional economic support given the irregular work schedule, the cost of child care for her two children and the low pay.

## VI. CONCLUSION

For the foregoing reasons, we affirm.