**Robert BESSIER, Plaintiff,**

v.

**PRECISE TOOL & ENGINEERING CO., INC., Defendant.**

No. 90–1048–CV–W–8.

United States District Court,
W.D. Missouri, W.D.

Dec. 16, 1991.

**1510**

James F. Stanley, Kansas City, Mo., for plaintiff.

Thomas O. McCarthy, St. Louis, Mo., Robert J. Janowitz, Larry M. Shumaker, Shook, Hardy & Bacon, Kansas City, Mo., for defendant.

## ORDER

STEVENS, District Judge.

Plaintiff alleges that he was terminated from employment with defendant on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Missouri Human Rights Act ("MHRA"), R.S.Mo. § 213.010, *et seq.* Plaintiff also claims fraudulent misrepresentation in his hiring. The case is now before the court on defendant's motion for summary judgment and plaintiff's motions to compel production of documents and to compel answers to plaintiff's first set of interrogatories.

### I. Factual Summary

Plaintiff was hired as a salesman by defendant at the age of 61 and began work in February, 1988. Plaintiff was hired specifically by Terry Aitkens, President of defendant, and was to be compensated on a commission and partial salary basis. Plaintiff later was terminated by Aitkens on April 24, 1990 at the age of 62.

Plaintiff alleges that he was terminated on the basis of his age. In support of this, he alleges 1) that Aitkens made comments on occasion relating to plaintiff's age,[1] 2) that plaintiff was "more susceptible to being lied to at the beginning of employment" because of his age and 3) that another employee of defendant who was the same age as plaintiff and who did the same work as plaintiff was similarly treated. *See* Plaintiff's Suggestions in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Suggestions"), p. 2, n. 1.

Plaintiff claims that his job performance was complimented by Aitkens and others who worked for defendant; he notes that his sales volume accounted for at least 25 percent of defendant's business during plaintiff's term of employment; and he argues that defendant failed to communicate to plaintiff any criticisms that it had with his performance. In addition, plaintiff notes various circumstantial indicators of his performance: a second shift was added to accommodate extra business, the engineering department was doubled in size, and a prior pay cut was restored, all after plaintiff began work for defendant.

Defendant, however, argues that plaintiff's performance did not meet its expectations and that it accordingly terminated plaintiff for non-discriminatory reasons. Specifically, defendant claims that it received complaints regarding plaintiff from two of its customers; defendant states that plaintiff made sexist and racially bigoted statements at the office; and it argues that plaintiff's "conduct around the office was inappropriate and unacceptable." Defendant's Suggestions in Support of its Motion for Summary Judgment ("Defendant's Suggestions"), p. 7. Moreover, plaintiff allegedly made inappropriate advances toward Aitkens' married sister-in-law at a retirement dinner.

### II. Standard for Summary Judgment

In reviewing defendant's motion for summary judgment, the court must consider whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, the court notes that summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

There is no genuine issue for trial unless the nonmoving party shows, through the record presented to the court, that it is able

---

**1.** Plaintiff claims that Aitkens once commented that plaintiff was a contemporary of the Wright brothers, and on at least one occasion asked plaintiff if his retirement was imminent. Bessier Deposition, p. 66; Bessier affidavit, p. 3.

to prove the existence of evidence sufficient for a jury to return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the non-moving party establishes the existence of evidence which is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted). Any inferences to be drawn from the facts, however, must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Once the moving party has carried its burden under Rule 56(c), the nonmoving party must do more than "rest upon the mere allegations or denials" in its pleadings, Fed.R.Civ.P. 56(e), or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Rather, the nonmoving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R.Civ.P. 56(e)).

The court believes that the issue presented here, whether plaintiff has proven its ability to present evidence sufficient for a jury to return a favorable verdict on its age discrimination claims, is extremely close. The court is generally unpersuaded by plaintiff's offer of proof, as presented in its pleadings to the court, that he was terminated by defendant because of his age. The case is presently not before the court, however, for a review on the merits. Plaintiff need only establish at this stage the existence of a material fact for trial, and the court finds for the reasons stated herein that he has done so, albeit with little room to spare. Accordingly, the court will find that counts I and II are not properly resolved on summary judgment.

As to count III's claim of fraudulent misrepresentation, however, most of the facts are not in dispute. Rather, the parties argue over whether, as a matter of law, the facts as generally agreed establish a claim of fraudulent misrepresentation. The claim is thus properly resolved on summary judgment, and for the reasons stated herein, defendant's motion for summary judgment will be granted as to count III.

### III. Plaintiff's Age Discrimination Claims

The United States Supreme Court articulated a three part method for analyzing Title VII discrimination claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), that the lower courts have since applied to claims brought under the ADEA. *Morgan v. Arkansas Gazette*, 897 F.2d 945, 948 (8th Cir.1990). *See also Hall v. American Bakeries Co.*, 873 F.2d 1133, 1134 (8th Cir.1989).

Under *McDonnell*, the burden is first on the employee to prove a prima facie case of discrimination. If the employee does that, the burden then shifts to the employer to prove that its actions were taken for legitimate, non-discriminatory reasons. If the employer makes such a showing, then the employee must show that the reasons offered by the employer are pretextual and that "age was a determining factor in the employer's action." *Tolan v. Levi Strauss & Co.*, 867 F.2d 467, 469 (8th Cir.1989).

There are four elements to a prima facie ADEA claim that an employee must establish under the first step of the *McDonnell Douglas* analysis: first, the employee is in the protected age group; second, his performance met the expectations of his employer; third, he was terminated from employment; and fourth, the employer sought to replace him. *Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 290 (8th Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). *See also Hall*, 873 F.2d at 1134.

In the case at hand, defendant does not contest, for purposes of the present motion, that plaintiff satisfies the first, third and fourth elements of the prima facie case. Thus, the issue to be resolved in this motion is whether there is a bona fide fact dispute as to whether plaintiff's job performance met the expectations of defendant.

Plaintiff and defendant each point to evidence supporting their respective positions as to whether plaintiff's performance did or did not meet defendant's expectations. Plaintiff argues that his performance was complimented by various employees of de-

fendant including Aitkens himself, and he notes that he was never criticized nor did he receive a negative evaluation for his performance on the job.

Defendant offers primarily two reasons why it terminated plaintiff, and argues that plaintiff's performance failed to meet expectations in these two respects. First, defendant states that it received complaints regarding plaintiff from two of its customers. This reason is undercut, however, by the fact that one of the two customers stated in his deposition that he never expressed any dissatisfaction to defendant about plaintiff's performance. Appendix H, pp. 7–8, to Plaintiff's Suggestions. This in itself would seem to create a justiciable issue.

■ Secondly, defendant argues that plaintiff conducted himself in an inappropriate manner and used sexist and bigoted language.[2] Plaintiff concedes that, on occasion, he may have referred to a woman as "babe," but he argues that Aitkens set the tone of the office with his own inappropriate conduct.[3] Defendant's stated reason for terminating plaintiff, however, need not be fair. *Gray v. Univ. of Arkansas at Fayetteville*, 883 F.2d 1394, 1401 (8th Cir. 1989). Thus, while it may not be fair that an employee is terminated for the same conduct practiced by the employer, the employers' termination of the employee is not discriminatory unless it is based "on an illegal criterion." *Halsell*, 683 F.2d at 290. *See also Smith v. Goodyear Tire & Rubber Co.*, 895 F.2d 467, 471 (8th Cir.1990); *Gray*, 883 F.2d at 1401.

While it is true that defendant's termination of plaintiff need not be fair, termination for the reason stated that plaintiff engaged in certain conduct which Aitkens allegedly also practiced raises at least the specter that the stated reason is pretextual.

That is, Aitkens might indeed be less likely to genuinely find fault with behavior that he allegedly also practiced.

Nevertheless, even if defendant's reason is pretextual, plaintiff must show that his age was a determining factor in defendant's action in order to prevail in this lawsuit. *Tolan*, 867 F.2d at 469. Plaintiff argues that he is able to do this primarily by pointing to Aitkens' comment that plaintiff was a contemporary of the Wright Brothers and his inquiry whether plaintiff's retirement was imminent.

■ The court is mindful of the proposition that isolated comments, in themselves, do not necessarily prove a claim of discrimination. *See, e.g., Goodyear Tire & Rubber*, 895 F.2d at 472 ("On the facts of this case, we believe this single reference to age is insufficient evidence of Goodyear's intent to discriminate."); *Walker v. St. Anthony's Medical Center*, 881 F.2d 554, 559 n. 6 (8th Cir.1989) (gender-related comment, made on at least one occasion, does not support claim that termination was based on gender); *Leichihman v. Pickwick International*, 814 F.2d 1263, 1271 (8th Cir.) (reference to age does not necessarily prove an intent to discriminate), *cert. denied*, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987); *Mullins v. Uniroyal, Inc.*, 805 F.2d 307, 309 (8th Cir.1986) (reference to age taken out of context does not support ADEA claim); *Cariddi v. Kansas City Chiefs Football Club, Inc.*, 568 F.2d 87, 88 (8th Cir.1977) (derogatory comments made as part of casual conversation do not necessarily rise to the level of a Title VII violation). In each of these cases, however, the court made the determination that the comment or comments at issue did not establish a claim of discrimination only after hearing the evidence at trial. It is premature at this point to say whether Aitkens'

---

**2.** Defendant alleges that plaintiff referred to minorities as "niggers" or "spics," addressed women in the office by calling them "babe," and bragged about his sexual exploits with younger women. He also made "inappropriate gestures" and unwelcome advances toward Aitkens' sister-in-law. *See* Defendant's Suggestions, pp. 6–9.

**3.** Aitkens allegedly took plaintiff and another employee to lunch at a topless bar; he allegedly

told plaintiff upon returning from Christmas vacation that he "got slippers and pussy for Christmas and both were too big"; and he allegedly once remarked on plaintiff's sales performance by saying, "What are you doing to get such good results, promising these guys blow jobs?" Plaintiff's Suggestions, p. 10.

alleged comments, if made, rise to the level of evidence of age discrimination on which to base an ADEA claim, particularly when the court does not have the benefit of knowing the context in which the comments were made.

The court is thus left trying to resolve charges made by both sides about the other parties' actions and intent. Each of these disputes—such as the quality of plaintiff's job performance, the respective allegations of inappropriate conduct, alleged remarks about plaintiff's age, the context in which any such remarks were made—raises genuine issues of fact which are better left to the jury and are inappropriate for resolution by summary judgment. The court thus finds that defendant has failed its burden of proving that there are no material fact issues in dispute, and accordingly, defendant's motion for summary judgment as to Counts I and II of plaintiff's First Amended Complaint will be denied.

### IV. Plaintiff's Claim of Fraudulent Misrepresentation

Plaintiff states in Count III of his First Amended Complaint that, at the time plaintiff entered into employment with defendant, defendant promised to pay plaintiff according to a defined commission structure. Plaintiff alleges that this promise was false, that defendant had no intention of keeping the promise, that defendant knew the falsity of the promise at the time he made it, and that defendant made the promise to induce plaintiff to accept employment. Plaintiff's First Amended Complaint, Count III. Thus plaintiff claims fraudulent misrepresentation by defendant. It is undisputed, however, that defendant has, in fact, paid all commissions that were owed to plaintiff. Plaintiff admits in his deposition that defendant paid not only all commissions that it owed to plaintiff during his employment, but it also paid all commissions on orders which plaintiff solicited before he was terminated but which were not shipped until after his termination. Appendix A, Defendant's Sug-

gestions, pp. 29–31. In light of these admissions by plaintiff, the court fails to see the falsity of defendant's promise which was known by defendant at the time the promise was made, and which would constitute a fraudulent misrepresentation.

In *Medicare–Glaser Corp. v. Guardian Photo, Inc.*, 739 F.Supp. 469 (E.D.Mo.1990), *aff'd*, 936 F.2d 1016 (8th Cir.1991), the court denied plaintiff's fraudulent misrepresentation claim where the defendant made its first payment to plaintiff according to the parties' agreement. The court found that, because of the payment, there was insufficient evidence to support the claim that the defendant did not intend, at the time the contract was entered, to make the agreed payments.

In the present case, defendant not only commenced payment of plaintiff's commissions, it in fact continued paying all of them, including those which were realized after plaintiff's termination. The court thus finds that plaintiff would be unable to establish either the falsity of defendant's promise to pay the commissions, or its intent at the time of contracting not to pay them. Accordingly, plaintiff's claim for fraudulent misrepresentation must fail. *See Craft v. Metromedia, Inc.*, 766 F.2d 1205, 1218 (8th Cir.1985) (failure to establish one element of fraudulent misrepresentation is fatal to the entire claim), *cert. denied*, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986).

### V. Plaintiff's Motions to Compel

Plaintiff's counsel seeks the discovery of various financial records of defendant in order to verify defendant's financial condition for purposes of recovering punitive damages.[4] *See State ex rel. Kubatzky v. Holt*, 483 S.W.2d 799, 806 (Mo.Ct.App.1972) (plaintiff is entitled to pretrial discovery of defendant's wealth as it relates to issue of punitive damages).

Counsel's original request for production

---

**4.** Since plaintiff seeks punitive damages in both Counts II and III, the court's granting summary

judgment for defendant as to Count III does not preclude an award of punitive damages.

of documents[5] was objected to by defendant as being overly broad and seeking confidential information. The parties attempted to resolve their differences over discovery with little success.[6] Counsel for plaintiff therefore offered to curtail its request, both as to the time period of the documents sought and by foregoing its request for certain documents. Specifically, counsel for plaintiff offered to forego the request for financial statements, income and expense documents, and bank statements; and he offered to shorten the request for bank deposit records and defendant's general ledgers to the period from January 1, 1988 to the present. *See* Plaintiff's Suggestions in Support to Compel Production of Documents, p. 2.

This offer likewise was rejected by defense counsel, who characterizes the plaintiff's discovery requests as "the epitome of an unbridled fishing expedition." Defendant's Memorandum in Opposition, p. 1. Defendant's argument is not persuasive. As the Missouri Court of Appeals stated in *State ex rel. Wohl v. Sprague*, a case cited by defendant, "Admittedly, the cry of 'fishing expedition' has lost its appeal." 711 S.W.2d 583, 586 (Mo.Ct.App.1986).

Plaintiff's counsel is clearly entitled to the discovery of financial records of defendant in order to prepare a case on the issue of punitive damages, as sought in Count II of plaintiff's First Amended Complaint. *Holt*, 483 S.W.2d at 806. Since defense counsel elected not to cooperate with plaintiff's counsel in refining the document production request, a tactic ill-advised in this venue, the court will grant plaintiff's motion and order defendant to produce all of the items requested in plaintiff's First Request for Production of Documents.

Plaintiff's counsel is advised, however, that such information will become a part of the evidentiary record only if, at the close of all the other evidence, plaintiff has made a prima facie case of entitlement to punitive damages. Counsel is therefore ordered not to reveal the documents requested nor to disclose any information referred to in those documents to anyone other than plaintiff and so many of plaintiff's counsel's staff as are necessary to prepare the case for trial.

Plaintiff's counsel also seeks to compel answers to its first set of interrogatories to defendant. The two interrogatories objected to by defendant asked defendant what his net worth is and what was his net income for the years 1986 through 1990. This information, like the document production request, is sought by plaintiff's counsel as it relates to plaintiff's claim for punitive damages. Defense counsel makes the same argument to this motion that it did to plaintiff's motion to compel production of documents, and accordingly, the court will make the same ruling and order the answers under the same restrictive conditions. Therefore, it is

ORDERED that defendant's motion for summary judgment is denied as to Counts I and II, and granted as to Count III of plaintiff's First Amended Complaint. Judgment is hereby entered in favor of defendant and against plaintiff on the Count III claim of fraudulent misrepresentation. It is further

ORDERED that plaintiff's motion to compel production of documents is granted in its entirety subject to the conditions limiting disclosure by plaintiff as stated herein. Defendant shall produce, within 14 days of the date of this order, the documents identified in items 2 through 7 of plaintiff's First Request for Production of Documents. It is further

---

5. In its first request for production of documents, plaintiff requested the following records from defendant: financial statements for the preceding three years; income tax returns for 1987, 1988 and 1989; documents reflecting the gross income, net income and expenditures of defendant from January 1, 1985 to the present; bank statements and deposit records from January 1, 1985 to the present; and defendant's general ledgers from January 1, 1985 to the present.

6. Defendant has produced, pursuant to a stipulation, its tax returns for 1987, 1988 and 1989 and apparently some of the general ledgers requested by plaintiff.

ORDERED that plaintiff's motion to compel answers to its first set of interrogatories to defendant is granted subject to the conditions limiting disclosure as stated herein. Defendant shall answer, within 14 days of the date of this order, interrogatories 18 and 19, as posed to defendant in plaintiff's first set of interrogatories.