Linda F. **WILSON**, Plaintiff,

v.

**GILLIS ADVERTISING COMPANY,**
et al., Defendants.

Civ. A. No. 92–AR–2126–S.

United States District Court,
N.D. Alabama, S.D.

Jan. 7, 1993.

---

Ann C. Robertson, Gordon Silberman Wiggins & Childs, Birmingham, AL, for plaintiff.

William S. Pritchard, III, Mary W. Burge, Pritchard McCall & Jones, Birmingham, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

ACKER, District Judge.

The court has for consideration a motion filed by Linda F. Wilson, plaintiff in the above-entitled cause, to compel the testimony of the Rule 30(b)(6), F.R.Civ.P., representative of defendant, Gillis Advertising Company ("Gillis Advertising"), and for sanctions against Gillis Advertising pursuant to Rule 37, F.R.Civ.P., because of said defendant's alleged refusal to provide the information sought from the Rule 30(b)(6) witness as to the financial condition of the corporate defendant. Wilson's action is brought against Gillis Advertising, her employer, under the Civil Rights Act of 1964, as amended in 1991. *Inter alia,* she seeks the punitive damages which the 1991 amendment would allow upon proof by a preponderance of the evidence of the intentional sex discrimination which she alleges occurred. She also seeks punitive damages under pendent state law theories, namely, assault and battery and intentional infliction of emotional distress. Wilson has requested the trial by jury to which she is entitled under each and all of her theories of liability, federal and state.

The question here presented is whether either the 1991 amendment to the Civil Rights Act or the law of Alabama permits pre-trial discovery into the financial status of the defendant for the purpose of giving that information to the jury for it to use in assessing punitive damages in the event punitive damages are called for.

■ This issue, insofar as it implicates state law, and if the state law were controlling, would be simple, because the application of Ala.Code § 6–11–23 (1992) [1] would

---

1. Section 6–11–23 provides in pertinent part:
   In all cases wherein a verdict for punitive damages is awarded, the trial court shall, upon motion of any party, either conduct hearings or receive additional evidence, or both, concerning the amount of punitive dam-
   ages. Any relevant evidence, including but not limited to the economic impact of the verdict on the defendant or the plaintiff ... shall be admissable; however, such information shall not be subject to discovery, unless

clearly prevent the jury from considering defendant's net worth in deciding what, if any, punitive damages to award. Although an argument can be made that this is simply an Alabama rule of evidence, and is thus procedural rather than substantive, it is so fundamental to the resolution of the issue of punitive damages under the Alabama law theories as to be effectively substantive and as a practical matter binding on a federal trial court when it tries an Alabama tort claim seeking punitive damages.

Plaintiff's access to defendant's net worth for her use during the jury trial of her Title VII claim is a much more difficult question, made even more difficult by the combining of her Title VII claim with her state law claims for simultaneous trial before a single jury. Generally speaking, the financial position of a defendant is relevant and discoverable in federal causes of action "where the complaint alleges facts demonstrating the possibility that punitive damages will be at issue." *Federal Procedure* § 26:58 (1988). The United States Supreme Court says that "evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270, 101 S.Ct. 2748, 2761, 69 L.Ed.2d 616 (1981). Wilson correctly cites *Woods–Drake v. Lundy*, 667 F.2d 1198, 1203 n. 9 (5th Cir. 1982) ("defendant's net worth was an important factor for the jury to consider in determining an amount of punitive damages"), for the proposition that a defendant's financial status is always a factor to be considered by the jury in assessing punitive damages. Finally, "[f]ederal and state courts [except Alabama by statute] have, as a matter of course, found a defendant's financial condition relevant for discovery purposes where punitive damages have been at issue." *State of Wis. Inv. Bd. v. Plantation Square Assocs.*, 761 F.Supp. 1569, 1577 (S.D.Fla.1991).

■ Based on these authorities, this court concludes that in a suit involving a federal question where punitive damages are at issue, the financial condition of the defendant is relevant and will be *admissible* as a factor to be used in determining the amount of punitive damages, if any, to be awarded.[2] None of the above cited authorities, however, informs this court at what point in the litigation such information becomes *discoverable* or at what point in the trial such information becomes *admissible*. As the district court in *Plantation Square* said, there remains unresolved the issue of whether a defendant's financial worth becomes discoverable and/or admissible "(1) upon the pleading of a punitive claim, (2) only after some *prima facie* showing by plaintiff of defendant's liability, or (3) only after the trier of fact has determined defendant's liability for punitive damages." *Plantation Square*, 761 F.Supp. at 1577. There are federal courts in all three camps. *Id.* Because there is no expression on the subject by the Supreme Court or by the Eleventh Circuit, an interesting choice of law problem is presented, even though this is not a diversity case, and therefore not within the aegis of *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), because "discovery is a procedural matter that is governed by the Federal Rules of Civil Procedure," *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 151 (D.Kan.1990).

The problem here must be addressed because 42 U.S.C. § 1988, which the parties agree is applicable, "authorizes resort to state law to provide enlightenment as to the parameters of actions under [the civil rights statutes] where the civil rights laws are 'deficient,'" unless the state law is "'inconsistent with'" the Constitution or federal law. *Bell v. City of Milwaukee*, 746 F.2d 1205, 1234 (7th Cir.1984). Gillis Advertising argues that there is a deficien-

---

otherwise discoverable, until after a verdict for punitive damages has been rendered. Ala.Code § 6–11–23(b) (1992).

**2.** It should be pointed out, however, that such evidence will be less important than would oth-

erwise be the case because monetary damages awarded under 42 U.S.C. § 1981a are subject to a statutory cap.

cy in the civil rights laws here being invoked by Wilson, namely, that those laws do not specify at what point in the litigation the financial background of a defendant becomes discoverable and/or admissible. Even though Rule 26(b), F.R.Civ.P., provides some guidance on this point, it does not squarely answer the question, nor does the case law applying Rule 26(b) answer the question. This court therefore must refer to state law, *unless* it is inconsistent with federal law. *See id.* ("Since the civil rights acts do not specify ... the measure of available damages, there must be a reference to state law...."). As already stated, under Alabama statutory law financial information about a defendant cannot be discovered "until after a verdict for punitive damages has been rendered," or unless the information is "otherwise discoverable." *Ala.Code* § 6–11–23(b) (1992).[3]

This court's initial sense was that § 1988 suggests a look at state law only where *substantive* deficiencies in the civil rights laws exist and not where, as here, there is a procedural issue as to the federal claim involving matters of discovery and admissibility of evidence. After all, "discovery is a procedural matter that is governed by the Federal Rules of Civil Procedure." *Mid Continent Cabinetry*, 130 F.R.D. at 151. Therefore, the court's first impression was that this matter would be governed entirely by Rule 26(b)(1), F.R.Civ.P. There is, however, relatively little case law interpreting § 1988, and the federal courts which have used it as a device and have applied state law have not characterized the law as either substantive or procedural. *See, e.g., Shaw v. Garrison*, 545 F.2d 980 (5th Cir. 1977) (examining Louisiana law on the survivability of an action following plaintiff's death in § 1983 action), *rev'd sub nom. Robertson v. Wegmann*, 436 U.S. 584, 98

S.Ct. 1991, 56 L.Ed.2d 554 (1978). In fact, there has been at least one instance where state law was applied in what could be characterized as a strictly procedural matter in a civil rights action, although at a time before *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), when federal courts looked to the most nearly analogous state statute of limitations in § 1983 cases because none exists for § 1983 suits. *See, e.g., Shaw v. McCorkle*, 537 F.2d 1289, 1291 (5th Cir.1976); *see also* Charles A. Wright, *Law of Federal Courts* § 60, at 394–95 (4th ed. 1983).[4] An argument, of course, can be made that nothing could be more a matter of substance than the bar of a statute of limitations. If the rationale of *Wilson v. Garcia* is employed here, there is the same compelling reason for adopting a uniform rule applicable in all federal courts so that the courts will not depend upon the vagaries of various state laws which are often markedly different.

Policy guidelines announced by the EEOC on July 8, 1992, state that the "financial position of the respondent is also relevant" to measure the amount of punitive damages that should be awarded. *EEOC Policy Guidances on Damages Provisions of 1991 Civil Rights Act and Disparate Treatment Cases Approved by Commissioner, July 7, 1992* at E–7. The said guidelines cite *Bessier v. Precise Tool & Engineering Co.*, 778 F.Supp. 1509 (W.D.Mo.1991), in which pretrial discovery was allowed in a case brought under the Age Discrimination in Employment Act. But the federal court in *Bessier* cited a Missouri state court decision as its authority for allowing the pretrial discovery, and this court finds no authority in the ADEA for the granting of the punitive damages which would call for financial information

---

**3.** And in Alabama state courts such evidence is inadmissible during the liability phase of the trial for the purpose of determining the amount of punitive damages. *Hanners v. Balfour Guthrie, Inc.*, 589 So.2d 684 (Ala.1991).

**4.** If the court's initial sense is correct—that § 1988 is designed to incorporate only *substantive* state law—the court has already concluded that the Alabama law at issue here, § 6–11–23, *is*

substantive. *See State of Wis. Inv. Bd. v. Plantation Square Assocs.*, 761 F.Supp. 1569, 1576–80 (S.D.Fla.1991). The federal district court in *Plantation Square* did an extensive analysis of a Florida statute similar to § 6–11–23 and concluded that it was substantive, requiring its application. As to the pendent state claims § 6–11–23 is surely substantive. As to the federal claims § 6–11–23 may be only procedural.

on the employer. Liquidated damages under ADEA and punitive damages have some similarity of purpose but are not sufficiently similar to trigger an inquiry into the financial status of an employer.

Because Wilson has appended state law claims to her federal action, the necessary application of § 6-11-23 to her state claims will prevent the jury from considering Gillis Advertising's net worth in assessing punitive damages if there is liability upon those claims. On the other hand, federal law mandates that the jury be allowed to consider Gillis Advertising's net worth in any assessment of punitive damages. It is impossible to imagine how a jury, having received evidence on the wealth of a defendant, could abide by a limiting instruction, no matter how well it is crafted, directing the jury to ignore such evidence in assessing punitive damages for the state claims while considering it in assessing punitive damages for the federal claims.

The difficult, superimposed question of whether punitive damages can be assessed as punishment for precisely the same conduct or misconduct, once under a federal theory and again under a state theory of liability, will have to be faced at a later date, depending upon the outcome at trial.

■ In order to minimize, if not to solve, the problem inherent in the conflicting state and federal rules here applicable, and the inefficiencies of a bifurcated trial, this court will employ the following procedure. The trial will be held on all counts simultaneously, with the jury deciding first only the questions of liability as to all of plaintiff's various theories which survive defendant's anticipated motion under Rule 50(a), F.R.Civ.P. If the jury finds a defendant liable for potential punitive damages on any state law claim or claims, the jury will then be called upon to assess punitive damages for the state claims, without having heard any evidence as to the defendant's financial worth. Only then, if liability has been determined against a defendant on

one or more of the federal claims, will evidence be presented as to that defendant's financial worth, after which the jury will be called upon to assess punitive damages on the federal claims.

■ In order to maintain fidelity to § 6-11-23, the discovery of Gillis Advertising's financial worth by plaintiff will be postponed until all questions of liability have been determined.[5] As was noted earlier, many federal courts allow for pretrial discovery of an alleged tortfeasor's financial condition, but there is authority for delaying discovery until after the trier of fact has determined the question of liability. *See, e.g., Brink's Inc. v. City of New York,* 717 F.2d 700, 707 (2d Cir.1983). Therefore, all defendants will be required to furnish to the court *in camera* well before trial an accurate statement of their respective net worths, certified by a certified public accountant pursuant to generally accepted accounting principles. The said reports will be furnished by the court to counsel for plaintiff immediately upon any finding of liability by the jury on a federal claim if there has been an evidentiary basis other than the financial worth of a defendant for the imposition of punitive damages against that defendant.

\* \* \*

In accordance with the foregoing conclusions, plaintiff's motion to compel and for sanctions is DENIED, except that defendants are hereby ORDERED to have prepared and to deliver to the court up-to-date certified financial reports no less than thirty (30) days before the trial setting.

---

5. In her supporting brief, Wilson asks the court also to allow discovery of the financial backgrounds of Wayne Gillis, Jeff Wood, and William Sanford, the other named defendants in this suit. Even though she only moved to compel discovery from Gillis Advertising, the court will, *sua sponte,* consider Wilson's request and deny the same for the reasons stated herein.