Mary Jane Kerr SELGAS, Plaintiff,

v.

AMERICAN AIRLINES, INC. and
Whadzen Carrasquillo,
Defendants.

Civ. No. 92–2890 (JAF).

United States District Court,
D. Puerto Rico.

July 14, 1994.

---

Judith Berkan, Rosalinda Pesquera, Charles Hey–Maestre, San Juan, PR, for plaintiff.

Jorge L. Capo–Matos, O'Neill & Borges, San Juan, PR, for defendants.

### OPINION AND ORDER

FUSTE, District Judge.

Defendants, American Airlines, Inc. and Whadzen Carrasquillo, move for judgment as a matter of law and, in the alternative, for remittitur or a new trial in this sexual discrimination and sexual harassment action. The plaintiff, Mary Jane Kerr Selgas, was employed by American for eighteen years, and at the time of her lay-off was working as an account executive in cargo sales. After a three-week trial, the jury awarded Kerr $1,000,000 in compensatory damages (which is automatically doubled under state law), $20,000 under the state unlawful termination statute, and $350,000 in punitive damages under Title VII, for a total of $2.37 Million.

### I.

**Motion for Judgment as a Matter of Law**

**A. Verdict Challenge**

American first asserts that the jury's original verdict required an entry of judgment for defendants on the claims of sex discrimination and retaliation. In the alternative, defendants argue that there was insufficient evidence to support a verdict for the plaintiff.

Defendants' first argument requires an analysis of the jury form utilized at trial. *See* Appendix. The verdict form, agreed upon by both parties,[1] consisted of a number of special interrogatories; the controversy centers around the first four. Questions 1 and 3 reflect a finding by the jury for the plaintiff on the questions of sexual discrimination and retaliation. The answers to questions 2 and 4, however, suggest that the jury found that American had valid reasons for the termination of plaintiff. Yet, the jury awarded the plaintiff $1,000,000 in compensatory damages and $350,000 in punitive damages, and a made a finding of unlawful termination of employment under local law.

In an attempt to clarify this ambiguity, this court solicited suggestions from counsel on how to proceed. Counsel for defendants and plaintiff agreed that the contradiction could be rectified by submitting the following general questions to the jury: "Please explain to us the meaning of your verdict, Part A (sex discrimination claims) and Part B (retaliation claims). Was it your intention to find in favor of the plaintiff or in favor of the defendants in each of these claims?" The handwritten supplement to the verdict form was sent to the jury, which returned with the following answers: "A. We are in favor of the plaintiff about [sic] sex discrimination. B. Also, we are in favor of the plaintiff about [sic] retaliation claims."

Defendants contend that the original verdict was consistent and that, therefore, there was no reason to propound additional questions to the jury. Defendants further argue that judgment should be entered for them on the issues of sex discrimination and retaliation.[2]

The Supreme Court has instructed that courts must attempt to harmonize answers to special interrogatories if at all possible. *Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963). *See also Toucet v. Maritime Overseas Corp.*, 991 F.2d 5, 8 (1st Cir.1993) (the Seventh Amendment requires a court to harmonize answers to special verdict forms if possible under a fair reading). Even keeping this admonishment in mind, we are unable to find that the initial verdict form was consistent.

Several aspects of the initial verdict form support the finding of inconsistency. Although the jury found that defendants would have made the same employment decision concerning plaintiff even if no sexual discrimination or retaliation was involved (Questions 2 and 4), in direct contravention to this finding, in Question No. 8, the jury found that the defendants failed to prove that there was just cause for the layoff of plaintiff. In addition, the jury awarded plaintiff punitive damages, which the court instructed the jury could only be granted upon a finding that the defendants had engaged in discriminatory practices with malice or reckless indifference to the constitutional rights of the plaintiff.[3]

1. The court's intention was to use a general verdict form. This controversy confirms once again the teaching of experienced judges to never give in to pressure by counsel regarding the use of special verdict forms. Seeking consensus, we did agree to use the special verdict form.

2. The defendants argue that because the jury found that American would have made the same employment decisions regarding the plaintiff even if her gender was not taken into account, the defendants proved a complete defense to the Title VII claims, citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989). However, the Civil Rights Act of 1991 partially overruled *Price Waterhouse*. Title VII now provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex or national origin was a motivating factor for any employment practice, even though other factors also motivated the

practice." 42 U.S.C. § 2000e–2(m). *See also Robinson v. S.E. Pa. Transp. Authority, Red Arrow*, 982 F.2d 892, 899 n. 8 (3d Cir.1993). However, when a defendant proves that the same employment decision would have been made even without the discriminatory factor, a plaintiff is only entitled to declaratory relief, injunctive relief, and attorney's fees and costs, not compensatory or punitive damages or reinstatement. 42 U.S.C. § 2000e–5(g)(2)(B). Therefore, even if we were to find that plaintiff's answers to questions 2 and 4 were consistent with the rest of the verdict form, defendants would not have established a complete defense. The result would be that plaintiff could not recover punitive or compensatory damages under the federal claims.

3. Although the jury was unaware of this, punitive damages cannot be awarded under Title VII if the defendants had proved that plaintiff would have been terminated even without the presence of discrimination. In other words, an affirma-

In order for the jury to double the amount of the compensatory award, it must have found that the defendants were liable under the Puerto Rico anti-discrimination statute, which provides for doubling of compensatory damages. *See* 29 L.P.R.A. § 146. Finally, if, as American argues, the jury meant to find for the defendants on the theories of sexual discrimination and retaliation, the entire $2.37 Million award would have to have been premised upon a finding of an invasion of privacy, a scenario which both parties agree is incredible.[4]

Defendants argue that the jury found for defendants on the sexual discrimination and retaliation claims, attributing the hefty recovery given by the jury to the admission at trial of evidence regarding events which took place prior to the statute of limitations period. We disagree with defendants' argument because, even assuming that the jury incorrectly relied upon information which occurred outside of the statute of limitations, this does not establish that the jury meant to find for defendants on the questions of sexual discrimination and retaliation. Rather, it merely underlines the fact that the jury did find evidence of sexual discrimination.

Since we conclude that the initial verdict was inconsistent, we proceed to two remaining issues related to the jury procedure. First, whether it was proper to submit the additional general verdict form to the jury. Second, whether there remained any inconsistency following the second jury submission.

The parties agree that the initial jury verdict form consisted of a special verdict, because it asked the jury for findings of fact without requesting a general finding for one of the parties. Therefore, the analysis should begin with Fed.R.Civ.P. 49(a).[5] The rule does not specify what is to be done in the event of an inconsistency in the written questions on a special verdict form. The First Circuit has held that where the answers on a special verdict form are inconsistent, the attorneys are present, and the jury has not yet been discharged, it is appropriate to resubmit the questions to the jury. *Santiago–Negrón v. Castro–Dávila,* 865 F.2d 431 (1st Cir.1989).

■ In *Santiago–Negrón,* this court resubmitted the original jury form with an additional instruction, in order to explain an inconsistency in the first set of answers. The situation here presents a somewhat different context, because following the initial inconsistent jury form, we submitted to the jury a supplemental general verdict form. Defendants allege that this action was impermissible, in that it transformed a special verdict form into a general verdict form. However, defendants cite no support for the proposition that such a solution is prohibited by the Federal Rules or the Seventh Amendment. Initially, the trial court has complete discretion over whether a general or special verdict is to be used. *Mateyko v. Felix,* 924 F.2d 824 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991); *Floyd v. Laws,* 929 F.2d 1390 (9th Cir.1991). If the initial choice of the type of form is left to the discretion of the court, and in light of the directive that jury verdicts should be reconciled if at all possible, we cannot find

---

tive answer to questions 2 and 4 on the verdict form legally prohibited the jury from awarding punitive damages in question 10.

**4.** The situation at hand is different from that in *McVey v. Phillips Petroleum Co.,* 288 F.2d 53 (5th Cir.1961), relied on by plaintiff. In *McVey,* there was a way to reconcile the jury's finding based on an explanation given by the jury. Here, we see no way to reconcile factual findings that (1) the defendants proved that they would have dismissed the plaintiff regardless of discrimination and, (2) the defendants failed to establish that there was just cause for the layoff of plaintiff.

**5.** Fed.R.Civ.P. 49(a) provides:

(a) Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special finding which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue....

error in the submission of the general verdict form to the jury.

■ We note also that when resubmitting questions to a jury for clarification, it is imperative that the court refrain from any action which might compel the jury to tailor its findings to any particular outcome. *See, e.g., Veranda Beach Club Ltd. Partnership v. Western Sur. Co.,* 936 F.2d 1364, 1382 (1st Cir.1991); *Karl v. Burlington Northern R. Co.,* 880 F.2d 68, 73 (8th Cir.1989). By requesting the jury to answer simple general questions as to which party they intended to find for on the retaliation and discrimination claims, this court avoided any undue influence on the jury process.

■ Even if we were to find that the general verdict questions should not have been submitted to the jury, the defendants not only failed to object to the questions, but agreed with the court that such a procedure was the correct path to follow. A party who fails to object to the resubmission of a jury verdict at trial cannot later challenge that action. *Theriot v. J. Ray McDermott & Co.,* 742 F.2d 877 (5th Cir.1984); *Ballou v. Henri Studios, Inc.,* 656 F.2d 1147 (5th Cir.1981).

■ Defendants allege that after the general verdict was combined with the special interrogatories on the initial verdict form an inconsistency arose because of the fact that the jury held for the plaintiff, while finding that the defendants had established that American Airlines would have made the same employment decision even if the unlawful motive were not present. We disagree. When faced with an apparent inconsistency between a general verdict and special interrogatory answer, the trial court has a duty to reconcile any such inconsistency. *Cool Light*

*Co. v. GTE Products Corp.,* 973 F.2d 31, 34 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 1417, 122 L.Ed.2d 787 (1992). A court need only resort to the three options for dealing with such a situation provided in Rule 49(b) if it is "not reasonably possible to resolve the apparent inconsistency between the answers and the verdict." *Wilks v. Reyes,* 5 F.3d 412, 415 (9th Cir.1993).[6]

■ We find that the supplemental questions submitted to the jury remedied any inconsistency in the verdict. The jury's holding that it intended to find for the plaintiff on the issue of liability for discrimination and retaliation, combined with the finding of wrongful discharge, the substantial damage award, and the granting of punitive damages, leads to a conclusion that the affirmative answers to questions 2 and 4 on the initial form were not conclusions that the defendants had met their burden of proof on these issues, but rather that the jury found some evidence that the employers had other reasons for the dismissal of plaintiff, in addition to sexual discrimination and retaliation.

■ Even if there remained any discrepancy in the final combined verdict, defendants failed to voice any objection before the jury was dismissed. Failure to point out an inconsistency in a verdict after the verdict is read and before the jury is dismissed constitutes waiver. *Bonilla v. Yamaha Motors Corp.,* 955 F.2d 150, 156 (1st Cir.1992); *Masure v. Donnelly,* 962 F.2d 128, 134 (1st Cir.1992).[7]

## B. *Sufficiency of the Evidence of Discrimination and Retaliation*

■ Defendants next argue that there was insufficient evidence for the jury to make a finding of discrimination and retaliation, ne-

---

**6.** Rule 49(b) provides three options if there is an inconsistency between a general verdict and interrogatories.

 (1) judgment may be entered in accordance with the answers to the interrogatories, notwithstanding the general verdict;
 (2) the court may return the jury for further consideration of its answers and verdict;
 (3) the court may order a new trial.
When the answers to the interrogatories are inconsistent with each other and one or more is inconsistent with the general verdict, then judgment may not be entered, but the court can

either return the jury for further consideration of its answers and verdict or order a new trial.

**7.** We also disagree with defendants' contention that it is not possible to waive the inconsistency argument because it implicates Seventh Amendment rights. The First Circuit has held that even though the Seventh Amendment dictates that a court harmonize jury answers if possible, a complaint of inconsistency is waived if not brought before the jury is dismissed. *Toucet v. Maritime Overseas Corp.,* 991 F.2d 5, 8 (1st Cir.1993).

cessitating a verdict as a matter of law. A court may only set aside a jury verdict and direct the entry of a contrary outcome if no reasonable jury could have returned a verdict adverse to the moving party. *Havinga v. Crowley Towing and Transportation Co.*, 24 F.3d 1480 (1st Cir.1994). In ruling on a motion for judgment as a matter of law, we must examine the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Cochrane v. Quattrocchi*, 949 F.2d 11, 12 n. 1 (1st Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1991).

## II.

### Sex Discrimination

■ In order to establish a prima facie case of sexual discrimination, the plaintiff had to prove by direct evidence that discrimination against her gender was a motivating factor in decisions regarding the plaintiff's employment. *Lipsett v. University of Puerto Rico*, 864 F.2d 881 (1st Cir.1988).

The jury could have made a finding that the defendants discriminated against plaintiff with respect to compensation, tenure or conditions or privileges of employment because of her gender. There was evidence presented, and the jury could have found, that Kerr was the only female cargo account executive, that she had a lower base salary than a male account executive, that she had a lower expense account than male co-workers, and that she was excluded from company events while male employees were included. In addition, there was evidence, which the jury could have accepted, regarding various sex-based comments made by American managers to Kerr.[8] In short, the evidence presented at trial was more than sufficient for a reasonable jury to return a verdict for the plaintiff on her claim of sexual discrimination.[9]

---

8. For example, there was testimony that during a company function, Kerr's supervisor told her that she should go home and take care of her children and that one of the American managers from Miami stated that certain functions where American's customers were entertained were "male" events.

## III.

### Retaliation

■ In order to establish a claim of retaliation, the plaintiff had to prove at trial that her exercise of a right under the civil rights laws (here, complaining to the personnel department and reporting the discrimination to the Puerto Rico Department of Labor and the Equal Employment Opportunity Commission) was a motivating factor in the employer's decision to lay her off. *See* 42 U.S.C. § 2000e–3(a); *Ramos v. Roche Products, Inc.*, 936 F.2d 43 (1st Cir.1991). The jury could have found that plaintiff complained to the American Airlines Personnel Office in Puerto Rico, to upper management in Miami, and ultimately to the Puerto Rico Department of Labor and the Equal Opportunity Commission regarding her allegations of sexual discrimination, and that she was laid off months after going to the federal and state authorities. Defendants presented evidence that Kerr was dismissed as part of a company-wide reduction. However, there was also evidence that Kerr was chosen for lay-off based on consideration of unadjusted sales figures from only the first two quarters of 1992, without taking into account that during the same period, the closing of the airport in Haiti had an adverse affect on her figures, and despite the fact that even relying on those figures, Kerr was ranked third out of four salespersons during those quarters. There was also evidence that the third quarter figures, in which Kerr led the department in sales, and which were available at the time of her termination, were not considered in the decision. The jury could also have found that management relied upon two "advisories" regarding Kerr's work, regardless of the fact that one of the advisories had been overturned by the company, while commendation letters in her file were not taken into

---

9. Defendants complain that the jury was prejudiced by the admission of information prior to July 15, 1991 and, therefore, outside of the statute of limitations. That evidence was admitted as background information only, and the jury was instructed to this effect. While the information could be used to place the events which occurred after July 15 into perspective, it could not be used as the basis for damages.

account, nor were previous positive evaluations or impressive forecast attainment figures. In addition, there was evidence that the one evaluation which was considered in the termination decision was evaluated without comparison to the evaluations of other account executives in the department. Overall, we find substantial evidence of retaliation, certainly sufficient to convince a reasonable jury.

## IV.

### Right to Privacy

Plaintiff claimed that her right to privacy under the Constitution of Puerto Rico was infringed upon by her supervisor, Whadzen Carrasquillo. P.R. Const. art. II, § 8. Again, there was abundant testimony regarding this allegation. The jury could have found that Kerr was subject to questions and remarks about her personal life, sufficient to establish a violation of her right to privacy.

## V.

### Motion for Remittitur

■■■■ Defendants request a remittitur of the damages award granted by the jury, arguing that plaintiff failed to mitigate her damages, that she earned more following her discharge than when employed by American and, therefore, has not incurred any economic damages, that the non-economic damage award was excessive and totally disproportionate to the injury, and that the plaintiff was improperly awarded double punitive damages, which were above the federally-imposed limit upon such damages. We address these concerns, keeping in mind that when evaluating economic damages, a verdict is deemed to be excessive if "shown to exceed 'any rational appraisal or estimate of the damages that could be based upon the evidence before the jury.'" *Kolb v. Goldring, Inc.*, 694 F.2d 869, 871 (1st Cir.1982) (quoting *Glazer v. Glazer*, 374 F.2d 390, 413 (5th Cir.1967), and when assessing awards for noneconomic damages, the standard of review is whether the award is so grossly

excessive as to shock the conscience. *Havinga*, 24 F.3d at 1484.

### A. *Failure to Mitigate*

■■■■ Defendants presented evidence that plaintiff received six job offers in the months following her termination. She rejected four outright, and she worked at the other two companies temporarily. Plaintiff testified that she was unable to continue working due to an inability to function emotionally. Shortly after resigning from the second position, she entered a hospital for a month for treatment related to an eating disorder and depression.

The evidence established that plaintiff actively sought a new position after she was dismissed, and that she attempted to work at two of the new positions. Her admission to the hospital for a month occurred in close temporal proximity to when she left the second position. Based on this evidence, we cannot find it unreasonable that a jury might conclude that she had met her duty to mitigate damages.

### B. *Income Earned at Metal Specialists*

After her dismissal from American, plaintiff provided some services for Metal Specialists, a business owned by her father. There was evidence that she helped to computerize the company and carry out other miscellaneous duties. For this work she earned $2,500 per month, plus a $20,000 performance bonus. Plaintiff claims that the work which she carried out was "moonlighting", which she could have accomplished while remaining employed full time by American. There was evidence that American would not allow such after-hours work by their employees, but there was also evidence that other American employees engaged in work in addition to their American duties. Given the conflicting testimony, a rational jury could have found that the income could have been earned while employed at American. Based on this, the plaintiff's economic loss is between $58,745 and $132,752, depending on when the jury concluded she was able to return to work.[10]

---

**10.** Plaintiff's expert witness testified that if she could return to work by March 31, 1994, her economic loss would be $58,745. If she returned by September 30, 1994, the loss would be

## C. *Amount of Non–Economic Damages*

Assuming economic damages of $58,745 to $132,752, the amount of non-economic damages awarded is between $941,255 and $867,248, prior to being doubled under the Puerto Rico statute. 29 L.P.R.A. § 146. This amount is granted to compensate for pain, suffering or mental anguish. An award for such damages should only be reversed if it is so grossly disproportionate to the injury established by the evidence as to be unconscionable as a matter of law. *Havinga,* 24 F.3d at 1484.

On the other hand, plaintiff introduced evidence of medical and emotional damages suffered as a result of the discrimination. There was testimony regarding a month's stay at a hospital in order to deal with an eating disorder and depression. On the other hand, defendants elicited testimony that plaintiff had been under psychiatric care for some time prior to her dismissal from American, and that her weight problems predated the occurrences in this case. There was also conflicting evidence regarding the length of time that the emotional problems brought on by the termination of plaintiff may continue to haunt her, with defendants' psychiatric expert testifying that she could immediately return to work and plaintiff's psychiatrist offering no opinion on the matter.

 Defendants have listed a number of awards in comparable cases in order to establish the excessiveness of the instant verdict. However, as the First Circuit has recently reaffirmed, the focus in reviewing damage awards must be the evidence presented at trial, and not a comparison of the actual monetary amount of other awards. *Havinga,* 24 F.3d at 1488–89. We do think, however, that it makes sense to look to guidelines courts have used in evaluating whether damage awards are proportionate to the injury. It is valid to take into account whether the emotional or mental problems predated the litigated event, *Bonn v. Puerto*

*Rico International Airlines, Inc.,* 518 F.2d 89, 94 (1st Cir.1975), whether there is an expectation of continuing harm into the future, *Havinga,* 24 F.3d at 1488, and the relative proportionality of economic to non-economic damages, *Anthony v. G.M.D. Airline Services, Inc.,* 17 F.3d 490, 495 (1st Cir.1994). Keeping in mind the difficulty in assessing these type of damages, we find that the jury verdict was excessive, where it allowed approximately eight to sixteen times as much non-economic as economic damages and where there was some evidence of pre-existing problems, and testimony reflecting an optimistic diagnosis for the future. Given this discussion, we **ORDER a new trial on the issue of compensatory damages unless the plaintiff agrees to remit the compensatory damage award to $600,000 within ten (10) days. A definite written expression must be made on the record.**

## D. *Punitive Damages*

Defendants next argue that because punitive awards were granted under state law—in the form of the automatic doubling of compensatory damages—and under federal law, defendants are being punished twice for the same behavior. The Civil Rights Act of 1991 amended Title VII to allow for punitive and compensatory damages, but capped the amount of awards based on the size of the defendant employer. 42 U.S.C. § 1981a(b)(3). Whether or not these restrictions are meant to usurp state law punitive and compensatory damages was not addressed in the legislative history of the Civil Rights Act of 1991, nor has it been decided by courts. *See, e.g., Wilson v. Gillis Advertising Co.,* 145 F.R.D. 578, 582 (N.D.Ala. 1993) ("The difficult, superimposed question of whether punitive damages can be assessed as punishment for precisely the same conduct or misconduct, once under a federal theory and again under a state theory of liability, will have to be faced at a later date").[11]

---

$55,768, and if she returned by March 31, 1995, the economic loss would be $132,752.

**11.** A somewhat analogous issue has arisen under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. The ADEA allows for liquidated damages which are compensatory and punitive in nature. Because of this, a district court in Rhode Island declined to allow punitive damages under state law, as well as liquidated damages, reasoning that this would allow a double recovery for a single wrong. As it was not challenged on appeal, the First Circuit mentioned this outcome without comment.

However, we do not think that this issue must be faced today, due to the nature of the Puerto Rico anti-discrimination statute and Title VII. The Puerto Rico statute provides:

Any employer who discharges, lays off or discriminates against an employee regarding his salary, wage, pay or remuneration, terms rank, conditions, or privileges of his work, or who fails or refuses to hire or rehire a person, or who limits or classifies his employees in any manner which tends to deprive a person of employment opportunities, or to affect his status as employee, on the basis of age, as defined hereinafter, race color, sex, social or national origin or social position, political or religious beliefs of the employee or applicant for employment:

(a) shall incur civil liability

(1) for a sum equal to twice the amount of damages sustained by the employee or applicant for employment on account of such action.

29 L.P.R.A. § 146.

Title VII, on the other hand, allows for punitive damages "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).

While the Puerto Rico statute is not explicitly punitive, the effect, of course, is to punish a defendant. But because the recovery of punitive damages under Title VII requires a showing of malice or reckless indifference, we cannot say that allowing the double damages under state law and punitive damages under federal law would result in double punishment for the same conduct—even if the jury had not found malice or reckless indifference, the plaintiff would have been entitled to recover an amount equal to double her compensatory damages under state law. We think that allowing an extra modicum of punishment for intentional discrimination, as provided by Title VII, is not duplicative.

In addition, the text of Title VII supports our decision not to eliminate federal punitive damages. The statute provides that "[n]othing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State." 42 U.S.C. § 2000e–7. This section existed prior to the 1991 amendments, and was not changed by those amendments.

As both parties agree, the amount of punitive damages which the jury awarded pursuant to Title VII, $350,000, is above the $300,000 maximum award allowed under the statute.[12] This, of course, brings up another issue, namely whether any of the compensatory damages count towards the total amount of damages which may be awarded under federal law.[13] Because the jury awarded $350,000 in punitive damages, the entire $300,000 allowed under Title VII is allocated to punitive. We do not see a problem with

---

*Keisling v. Ser–Jobs for Progress, Inc.*, 19 F.3d 755, 757, n. 1 (1st Cir.1994). *See also Bailey v. Container Corp. of America*, 660 F.Supp. 1048 (S.D.Ohio 1986) (holding that because liquidated damages under the ADEA are punitive in nature, a jury's award of state punitive damages and ADEA liquidated damages constitutes a double recovery and therefore reducing the total recovery by the amount of the liquidated damages award); *but see Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 616 (1st Cir.1985) (mentioning that plaintiff was awarded liquidated damages under the ADEA as well as double damages and severance pay under Puerto Rico law); *Marin Piazza v. Aponte Roque*, 668 F.Supp. 63, 69 (D.P.R.1987) (jury verdict awarded double compensatory damages under the state anti-discrimination statute and punitive damages under 42 U.S.C. § 1983).

**12.** 42 U.S.C. § 1981a(b)(3) provides:

The sum of the amount of compensatory damages awarded under this section ... and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—

. . . .

(D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

**13.** Plaintiff argues that Title VII allows a total of $300,000 for compensatory damages and another $300,000 for punitive damages for companies the size of American. We disagree, as the clear language of the statute mandates a total of $300,000 for combined compensatory and punitive damages.

this situation, as the entire amount of compensatory damages could be granted pursuant to state law, where there is no limit, leaving all of the $300,000 to be used for punitive. Therefore, we decline to eliminate the punitive damages, but we will limit the amount to $300,000, as provided under Title VII.

Defendants assert that even if punitive damages should be granted under Title VII, none of the evidence at the trial would support a finding of malice or reckless indifference to plaintiff's constitutional rights. We disagree with this argument, finding that there was adequate evidence of intentional discrimination presented at trial, in particular the manner in which American made the decision to terminate plaintiff.

### E. Damages for Wrongful Termination

■ Defendants' next suggestion is that severance pay under Puerto Rico Law 80, 29 L.P.R.A. § 185a, should not be awarded where a compensatory damage award under other statutes is greater than the amount of the severance pay mandated under Law 80. This contention is based on a footnote in *Loubrido v. Hull Dobbs Co. of Puerto Rico, Inc.*, 526 F.Supp. 1055, 1061, n. 9 (D.P.R. 1981), which reads: "[I]t should be noted that severance pay received by plaintiff on account of his termination equaled his basic salary for the month of December 1975. For this reason, back wages have been computed since January 1976 and the exclusion of severance pay was automatically made."

The wrongful discharge statute states quite clearly that it is remedial. The very title conveys this fact: "Indemnity for Discharge Without Just Cause". The Puerto Rico Supreme Court has also confirmed this fact. *Beauchamp v. Holsum Bakers of P.R.*, 116 D.P.R. 522 (1985) (holding that section 185a of Title 29 is remedial in nature). Because the wrongful termination statute is meant to make the plaintiff whole, and the compensatory damages granted under the state anti-discrimination statute have already

accomplished this goal, we must strike the $20,000 granted for unjust termination. *See Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1345 (1st Cir.1988) ("a plaintiff is entitled to only one full recovery, no matter how many legal grounds may support the verdict").[14]

### VI.

#### Conclusion

To summarize, we **DENY** defendants' motion for judgment as a matter of law, holding that the clarified verdict form clearly expressed the jury's findings, and that there was sufficient evidence to find for the plaintiff on the issues of sex discrimination, invasion of privacy, and retaliation. As to the damage award, the $20,000 allocated under Puerto Rico Law 80 must be **eliminated,** as they are duplicative of compensatory damages, the amount of punitive damages under Title VII must be **limited** to $300,000 to comply with the statute, and finally, we **ORDER** a remittitur of the compensatory damages to $600,000, to be doubled under state law, for a total damages award of $1,500,000. Plaintiff can either accept the remittitur, or a new trial will be ordered.

**IT IS SO ORDERED.**

#### APPENDIX

United States District Court

District of Puerto Rico

Civil No. 92–2890 (JAF)

Mary Jane Kerr Selgas, Plaintiff,

v.

American Airlines, Inc. and Whadzen Carrasquillo, Defendants.

#### VERDICT

We, the Jury, find as follows:

---

**14.** We highlight a fundamental difference between the potential for duplication regarding the unjust discharge award and the alleged duplication of the punitive damages award. The concern here is that plaintiff is being compensated twice for one injury, while above we examined whether the defendant was being punished twice for the same behavior.

## A. SEX DISCRIMINATION CLAIMS:

1. Has plaintiff Mary Jane Kerr proved that her sex (gender) was, more likely than not, a motivating factor in defendants' employment decisions after July 15, 1991?

YES X NO ___

If your answer to question number 1 is "YES", please answer question number 2.

If your answer to question number 1 is "NO", do not answer question number 2 and proceed to answer the questions under the heading "Retaliation Claims".

2. Have defendants American Airlines and Whadzen Carrasquillo proved, more likely than not, that they would have made the same employment decision(s) concerning plaintiff even if the unlawful motive, namely plaintiff's sex, was not present?

YES X NO ___

## B. RETALIATION CLAIMS:

3. Has plaintiff Mary Jane Kerr proved that her reporting the claim to the employer or her filing of a discrimination charge with the Puerto Rico Department of Labor and the Equal Employment Opportunity Commission was, more likely than not, a motivating factor in defendants' employment decisions to terminate her employment after July 15, 1991?

YES X NO ___

If your answer to question number 3 is "YES", please answer question number 4.

If your answer to question number 3 is "NO", do not answer question number 4 and proceed to answer the questions under the heading "Sexual Harassment".

4. Have defendants American Airlines and Whadzen Carrasquillo proved, more likely than not, that they would have made the same employment decision concerning plaintiff even if unlawful motive, namely plaintiff's filing of a discrimination charge with the Puerto Rico Department of Labor and the

Equal Employment Opportunity Commission, was not present?

YES X NO ___

## C. "HOSTILE ENVIRONMENT" SEXUAL HARASSMENT:

5. Has plaintiff Mary Jane Kerr proved that she was, more likely than not, subject to "hostile environment" sexual harassment by Whadzen Carrasquillo while he was her supervisor since July 15, 1991?

YES ___ NO X

If your answer to question number 5 is "YES", please answer question number 6.

If your answer to question number 5 is "NO", do not answer question number 6 and proceed to answer the questions under the heading "Right to Privacy".

6. Have defendants American Airlines and Whadzen Carrasquillo proved, more likely than not, that the behavior complained of did not affect a tangible condition of Mary Jane Kerr's employment?

YES ___ NO ___

## D. RIGHT TO PRIVACY:

7. Has plaintiff Mary Jane Kerr proved that her right to privacy was, more likely than not, violated by Whadzen Carrasquillo while he was her supervisor since July 15, 1991?

YES X NO ___

## E. WRONGFUL DISCHARGE CLAIM:

8. Have defendants proved that there was just cause for the layoff of plaintiff Mary Jane Kerr on November 30, 1992?

YES ___ NO X

If your answer to question number 8 was "NO", please indicate the amount of severance pay plaintiff is entitled to in dollars: $20,000.00.

## F. DAMAGES:

If your answer to any of the questions numbered 1, 3, 5 or 7 was "YES", then proceed to answer questions numbered 9 and 10. If your answer was "YES" only to question number 8, do not answer the questions numbered 9 and 10 and return your verdict.

9. Under the law given to you in the judge's instructions, state the amount of compensatory damages plaintiff should be awarded.

$1,000,000.00; multiplied by 2 = $2,000,000.00.

10. Under the law as given to you in the instructions, state the amount, if any, of punitive damages that the plaintiff should be awarded. State such award in the space numbered 10B. If you decide not to grant punitive damages, say so by placing an "X" in the space numbered 10A.

10A. _____ Punitive damages should not be awarded.

10B. $350,000.00 in punitive damages should be awarded.

San Juan, Puerto Rico, March 17, 1994.

/s/ Francisco Diaz
FOREPERSON
Francisco Diaz

Please explain to us the meaning of your verdict, Part A (sex discrimination claims) and Part B (retaliation claims)

Was it your intention to find in favor of the plaintiff or in Favor of the defendants in each of the claims?

A. We are in favor of the plaintiff about sex discrimination.

B. Also, we are in favor of the plaintiff about retaliation claims.